## TRAVER *vs.* HALSTED.

A covenant *to execute a proper conveyance for the conveying and assuring the fee simple of certain premises*, the conveyance to contain a general warranty and the usual full covenants, is not satisfied by the mere execution of such a conveyance—*the covenanter must have the title* at the time of the conveyance.

A notice given by a *purchaser* of real estate to the *vendor previous* to the day appointed for the execution of the conveyance, that he will not *accept* the conveyance, excuses the vendor, *it seems*, from a strict performance on his part, and perhaps wholly discharges him from his covenant ; but if subsequent to such notice, the purchaser on the appointed day *tender* performance, and the vendor on his part *absolutely* refuses to perform, and does not show that his refusal arose from inability in consequence of the notice of the purchaser, an action lies against the vendor for the breach of his covenant.

In an action on an instrument containing *mutual covenants*, where the plaintiff avers *tender* of performance, on his part, the defendant is bound to take issue upon such *averment*, and is not at liberty to plead the non-performance of the covenants on the part of the plaintiff in bar of the action.

QUESTION on sale of real estate.　On the twenty-fifth day of December, 1837, an agreement under seal was entered into between the parties, whereby it was stipulated on the *part of Halsted to sell to Traver a farm containing about 163 acres of land, to be conveyed as described in his deed without survey, at the rate of $70 per acre, and that on or before the fifth day of April then next, on receiving from Traver the price of $70 per acre, that he would, at his own costs and expense, *execute a proper conveyance for the conveying and assuring the fee simple of the premises* to Traver, free from all incumbrances, except a mortgage, executed by him to Seth Lawton for securing the payment of $5000—the conveyance to contain a general warranty and the usual full covenants.　On the part of Traver, it was stipulated, that on or before the fifth day of April ensuing the date of the agreement, on the execution of such conveyance by Halsted, to

[ *67 ]

pay the sum of $70 per acre for the farm, in manner following : *that he would assume and pay the mortgage of* $5000 *when due, and secure the balance to be paid in cash on or before the first day of May* ensuing the date of the agreement. The parties bound themselves each to the other for the performance of their respective stipulations, in the penalty of $1500, which were declared *liquidated damages*. In May, 1838, Traver brought an action of covenant against Halsted, claiming the recovery of the $1500 stipulated damages. After setting forth the agreement in his declaration, the plaintiff averred that on the 5th April, 1838, he *tendered* to the defendant an agreement in writing under his hand and seal, whereby he *assumed to pay*, when due, the mortgage to Lawton, and *covenanted* to pay the moneys thereby secured, and to indemnify the defendant from the payment thereof; and on the same day *tendered* to the defendant *a bond* in the penal sum of $14,000, executed by the plaintiff and two other persons as sureties, conditioned to pay on the first day of May then next the *balance* of what should be due to the defendant, according to the terms of the agreement of 25th December, 1837 ; and that the sureties were severally worth $7000, over and above all debts owing by them. He also averred that the defendant *did not* and *would not execute the conveyance* on the fifth day of April, according to the terms of the agreement; and on the contrary thereof, that *he had \*no title [ \*68 ] whatever to the premises*, and wholly neglected and refused to execute any conveyance whatever to the plaintiff conveying and assuring to him the fee simple, &c.

The defendant interposed several pleas in bar. In the *third* plea he alleged that the plaintiff did not, on or before the 5th April, 1838, nor at any other time pay, or tender, or offer to pay, the sum of $70 per acre, for the farm, &c. *Fourth* plea, that the plaintiff did not on, &c. nor at any other time assume and pay, or offer, or tender to assume and pay, or pay, or tender to assume and pay when due, the said mortgage (the mortgage to Lawton). *Fifth* plea, that the plaintiff did not on, &c. nor at any other time secure, nor offer or tender to secure, the balance of the purchase money for the farm, over and above the mortgage, &c. *Sixth* plea, that on the 5th April, 1838, he, the defendant, duly executed and tendered a deed of conveyance of the premises to the plaintiff, setting forth *in hæc verba*, a conveyance of the premises, with full covenants, embracing among others the covenant of warrantry. In the *eighth* plea, the defendant alleged in bar of a recovery, that "*before* 5th April, 1838, to wit, on the *fourth* day of said April, said plaintiff wholly refused to accept any deed of conveyance of said premises on the said fifth day of April, under and in pursuance of said articles of agreement, and to perform and keep the covenants and agreements in said articles of agreement on his part to be kept and performed, at the times and in the manner prescribed in said articles of agreement," without this, &c. (traversing the *refusal* to execute the conveyance.)

The plaintiff, after *enrolling* the articles of agreement· declared upon, *de-murred* separately to the pleas above enumerated, assigning various special causes of demurrer, and amongst others that the three first pleas were bad, inasmuch as they each concluded with a *verification*, and that the last plea was bad in not alleging to whom the refusal to accept a conveyance was communicated.

*H. Swift,* for the plaintiff.

*S. Barculo,* for the defendant.

[ *69 ]      *By the Court,* Cowen, J. The three first of the pleas demurred to are clearly bad, as not being a direct answer to either of the plaintiff's averments, that he tendered the requisite assumption, and security. The tender of these was fully and directly averred; they presented the material and issuable facts upon which the plaintiff relied as entitling him to recover; and the only facts to which it is pretended the pleas can be applied. The course of the defendant was briefly and directly to deny the tender in manner and form as the plaintiff had alleged and set it forth; instead of which, he either denies payment, &c. generally, as in the third plea, or tender pursuant to the intent, &c. as in the fourth and fifth; concluding in all three with a verification. Had the tenders avered in the declaration been well answered, several complete issues would have been formed, which should have been followed with a conclusion to the country.

The sixth and eighth pleas demanded somewhat more consideration. The sixth raises the question whether the defendant's covenant calls for any thing more than a conveyance in a certain *form,* without title; or whether it was necessary to shew, especially as the plaintiff had denied the fact in his declaration, that he had a *fee* to convey. The eighth plea supposes that a refusal by the plaintiff on the *fourth,* discharged the defendant from all obligation to convey on the *fifth* day of April.

1. The sixth plea admits, that when the plaintiff came and offered to perform, tendering the requisite securities for the purchase money, the defendant had no title to convey; and insists that the tender of a deed corresponding with the covenant in point of form was sufficient. The covenant is " to execute a proper conveyance for conveying and assuring the fee simple," &c. There is then a distinct provision that the conveyance shall contain full covenants. To my mind a *proper* conveyance for *conveying* and assuring fee simple, could not be executed by the grantor, unless he held the title. Otherwise it would be but a conveyance *proper* for *conveying* and assuring *no title at all.* The tender was, therefore, clearly bad as coming short of the express intent of the parties. The covenant was more than a

*stipulation to execute a deed of a certain description or form, to      [ *70 ]
contain such and such covenants.    The cases cited by the defend-
ant's counsel, therefore, do not apply.   *Carpenter* v. *Bailey*, 17 *Wendell*, 244.

2.  As to the refusal of the plaintiff on the 4th, to receive a conveyance
on the day appointed by the contract, or, as we will read it for the present,
notice to the defendant that it would be received, I agree that this might
have operated as an excuse for the defendant not being ready, and perhaps
would have wholly discharged him, had the matter stopped here.   *Jones* v.
*Barkley*, 2 *Doug.* 684, 694, *per Ld. Mansfield Ch. J. and Buller, J.*
But the refusal on the 4th was not conclusive on the plaintiff.   He had a
right to change his mind, as he avers that he did, which is not denied by the
plea, and still present himself and offer to perform on the fifth.   This was
equivalent to a revocation of what he had before said, which could not operate
as more than a mere license or excuse to the defendant for not being ready.
The refusal did not discharge the covenant; but we would not allow the
plaintiff thus to play a trick on the defendant.   *Franchot* v. *Leach*, 5 *Cow-
en*, 506, 508.   He does not, however, say he had been thrown off his guard,
and that he merely wanted time, therefore.   He admits, by not denying,
what the plaintiff avers in his declaration, that when he did come, and ten-
der a performance, the defendant met him with a general refusal; and would
not even receive the securities.   *Non constat* that he had parted with the ti-
tle, or taken any other steps in consequence of the notice, of the day before,
so as to be prejudiced by it.   If he had, then the plaintiff ought to be estop-
ped from insisting on performance.   But he recanted his refusal within the
time fixed by the covenant, and the defendant still continued, for aught we
hear, on the 5th and up to the time of the recantation, in all respects as
able to perform as he would have been had the plaintiff said nothing.

There is certainly another objection to this plea, the main one urged on
the argument, which seems to me quite difficult to overcome.   It is not aver-
red that the plaintiff's refusal was addressed to the defendant.
Now it might have *been a refusal answering to the word in the      [ *71 ]
plea, had it been addressed to a neighbour no way connected with
the defendant, and of which he never heard.   The utmost the allegation can
mean is, that the plaintiff declared on the fourth, that he would not accept
a deed on the fifth.   The word *refuse* is a very unhappy one to use for the
fourth.   How could the plaintiff refuse, in the proper sense of the word, on
that day, what the defendant had no right to solicit, or to offer, or to expect,
until the next day.   The plea, therefore, can mean nothing more than a dec-
laration that the plaintiff would not perform when the time came.   This
might, in its own nature, as well be addressed to a stranger as to the de-
fendant.

The pleas demurred to are, we think, all bad; and the judgment must be
for the plaintiff, with leave, &c.