CRIST vs. ARMOUR.

When either party to a contract which provides for performance by both parties at the same time and place, before the time for performance arrives, notifies the other that he will not perform, and does not, before the time for performance, recall such notice; or if he puts it out of his power to perform on his part; the other party is relieved from averring or proving performance, or offer to perform.

Thus where, after the making of a contract for the sale and delivery of a quantity of cheese, to be paid for on delivery, the vendor sold the cheese, and delivered a portion thereof to a third party, it was *held* that this put it out of his power to perform the original agreement; and that the vendee could maintain an action for the breach thereof, without averring or proving performance, or a readiness or offer to perform.

Under such circumstances, the sale to the stranger will be assumed to have been a valid sale; but even if it be shown to be otherwise, the vendor will not be entitled to allege it.

In an action by the vendee, for a breach of such a contract, the plaintiff's right of recovery is not to be limited to the damages sustained upon the portion of the property sold and delivered to the stranger.

THE complaint in this case alleged that the defendant, on or about the month of May, 1859, contracted and agreed to and with the plaintiff, to sell to the plaintiff and deliver to him, at the New York Central Rail Road depot, at Oneida, all the cheese he then had on hand, made from a dairy of forty cows, and also the cheese made from the said dairy thereafter, during the season of 1859; and in consideration thereof, the plaintiff was to pay the defendant therefor the sum of eight cents per pound for said cheese, payable on delivery, or whenever called for; that it was also contracted and agreed, that the defendant should hold his cheese until called upon by the plaintiff for delivery, to the number of one hundred; and the plaintiff averred that he had always faithfully observed and kept the said contract on his part, and that the defendant, on the 29th day of May, 1859, delivered to the plaintiff on the contract, at the said depot, thirteen hundred and five pounds of the said dairy of cheese; and on the 22d day of June, 1859, twelve hundred and fifty-five pounds, at the place aforesaid; and the plaintiff alleged that

Crist *v.* Armour.

he paid the defendant for the cheese, so delivered upon the contract, the contract price, to wit, the sum of eight cents per pound, which was received by the defendant in full payment, upon the contract aforesaid, for that quantity. The plaintiff further alleged, that the defendant had, ever since the delivery of the said two parcels of cheese, wholly refused and omitted to perform the contract on his part; that the defendant made in his dairy, during the season of 1859, sixteen thousand pounds of cheese, which was sold to the plaintiff under the contract aforesaid, and all of which the defendant refused to deliver to the plaintiff at the said depot at Oneida, or at any other place, and which the defendant was bound to deliver as aforesaid, and which he has refused to deliver, although often requested so to do ; and the plaintiff averred that it was contracted and agreed, by and between the plaintiff and defendant, that the cheeses made in said dairy should all be delivered at the place aforesaid, as fast as they would do to go to market, and all were to be delivered during the season of 1859 ; that the defendant refused to deliver any portion of the said sixteen thousand pounds of cheese upon said contract, and refused to perform the said contract, and sold the cheese and delivered the same to other parties ; that the said sixteen thousand pounds of cheese which the defendant was to have delivered under said contract, and which he as aforesaid had refused to deliver, was worth at the place of delivery, at the time aforesaid, eleven cents per pound. And the plaintiff alleged that he had sustained damages by reason of the breach of the contract aforesaid, on the part of the defendant, to the amount of five hundred dollars. Wherefore he demanded judgment against the defendant for that sum, with costs.

The answer was a general denial of the matters stated in the complaint.

The issue was brought to trial before Hon. WILLIAM F. ALLEN, justice of the supreme court, at a circuit court held at Herkimer, in April, 1860. Thomas W. Moore was sworn

and examined as a witness on the part of the plaintiff, and testified as follows: "I was buying and sending cheese, in 1859, as the agent of the plaintiff, who resides at Mohawk, Herkimer county. I was present at a bargain made for the defendant's dairy of cheese, May, 1859, at defendant's house. Defendant, Mr. Jacobson and I were present. Mr. Jacobson resides at Mohawk. This was on the 14th day of May. We went into the cheese house and examined his dairy. His price was eight cents; we finally settled upon eight cents. It was to be a good dairy; it was a dairy of between thirty-three and forty cows. The defendant was to deliver the cheese at the Oneida depot. He was to take off one load in a few days, and I was to come around and pay him for it; the balance he was to deliver from time to time, as we ordered it. He was to hold his cheese, up to the number of one hundred, whenever we desired it. We were to pay cash on delivery at the Oneida depot, for all except the first load. The bargain was for the whole dairy, for the whole season. The defendant delivered the first load, amounting to about one hundred and four dollars, on the 30th day of May, and I paid him for it. He delivered another load on the 22d day of June, according to my directions. The amount was twelve hundred and fifty-five pounds, for which I paid him, on delivery, one hundred dollars and forty cents. I saw the defendant next on the 9th day of August. I went to examine the cheese, to see if any would do to go to market. He then had in all sixty-eight cheese on hand. The weather was warm, and they were not fit to go. I met the defendant in the road, and told him that I came around with the intention of taking some of the cheese the next day, but that I thought they would not do to go. The defendant was anxious to have me take some then. I told him I would be there again in two weeks, but I would not promise to take any then, if the weather should continue warm. The defendant said, get around as soon as you can. I was there again on the 22d, and found he had sold. He would have had on that day

eighty-two cheese, if he had kept them all on hand. When we first arrived there the defendant was not at home; he came home soon, and said he had carried off a load that day; and he said he had sold his dairy to Mr. Leland. I told him I did not think it possible, and said to him, you do not deny that you was to hold, up to one hundred—to which defendant said nothing. I told the defendant that the plaintiff would hold him responsible. I told him I would not say any thing about the load sent off, if he would bring the rest. The defendant made no reply." On his cross-examination, the witness further testified: "After the first load, we were to pay on delivery at the Oneida depot. If we did not direct otherwise, defendant was to hold up to one hundred cheese. We were not to take off the June cheese, unless we chose to." Other testimony was introduced, confirmatory of the above.

It was admitted by the defendant that the amount of cheese made by him, not delivered to the plaintiff, was 9817 pounds.

Thomas W. Moore testified that the defendant would have had one hundred cheese on hand the 10th or 11th of September, if he had not disposed of it to other parties. On the 22d of August, cheese was worth, at Oneida, $8\frac{1}{2}$ to 9 cents per pound; on the 10th of September, 9 or $9\frac{1}{2}$; October 1st, 10 cents; 1st of November, $10\frac{1}{2}$; 1st of December, $10\frac{1}{2}$. John Crist, the plaintiff, was sworn and examined on his own behalf, and testified that he had been an extensive dealer in cheese for several years. "The contract for this cheese was made by my agents; I was well acquainted with the value of cheese at Oneida last season, and bought a good deal of cheese there; on the 22d of August it was worth 9 cents; September 10th, $9\frac{1}{2}$ to 10; October 1st, $10\frac{1}{4}$ cents; November 1st, $10\frac{1}{4}$ cents; December 1st, $10\frac{1}{4}$ cents." It was admitted that the load of cheese sold by the defendant in August, amounted to seventeen hundred and thirty-five pounds; and it was agreed that the damage upon the said load was ten dollars.

Both parties rested, upon the above facts. The plaintiff claimed that he was entitled to recover damages on the balance of the said cheese, to wit, nine thousand eight hundred and seventeen pounds; and that the measure of damages should be the difference between the contract price and the actual value of the said cheese, at the time when the plaintiff was entitled to have the same delivered under the contract. The defendant moved and insisted that the plaintiff could only recover damages upon the one load of cheese sold in August; and insisted that it was the duty of the plaintiff to have demanded the cheese in question; and to have proved that he was ready and willing to take and receive each parcel of said cheese, and pay for the same at the contract price at the place of delivery; and that the proof did not show that the defendant was liable for damage on any portion of said cheese, except the said one load. The plaintiff insisted that having, by his agent, called upon the defendant for the cheese on the 22d of August, 1859, and the defendant having told such agent that he had sold the entire dairy of cheese, and had that day delivered one load, that was a sufficient demand and compliance with the contract on the part of the plaintiff; and that it was not necessary for the plaintiff to make any further demand, or offer to pay for the said cheese or any part thereof. And the plaintiff further insisted, that from the facts proved and admitted, it was a question of fact for the jury to decide as to whether or not there had been a sufficient demand of the cheese, and offer to pay upon the contract; and also whether or not a waiver of demand and payment might be inferred from the declarations and conduct of the defendant on the 22d day of August, 1859. And the counsel for the plaintiff also insisted, that inasmuch as the defendant informed the plaintiff's agent that he had sold his cheese to another party, and had, as the plaintiff claims, in fact delivered cheese to another party, and refused to deliver any more to the plaimtiff, no further performance, or offer of performance, was necessary on the part of the plaintiff.

Crist *v.* Armour.

The court decided, as matter of law, that the plaintiff could only recover damages upon the one load of cheese sold and delivered on the 22d of August; to which ruling and decision the plaintiff's counsel excepted. And the plaintiff's counsel having insisted upon the right to go to the jury upon the question whether the defendant had absolutely refused to perform the contract, the court ruled and decided that there was no absolute refusal by the defendant to perform, and no evidence upon that question to be submitted to the jury; to which ruling and decision the plaintiff's counsel excepted. The court also ruled and decided, as matter of law, that the plaintiff had not by performance, or offer of performance on his part, put himself in a situation to hold the defendant liable, or to recover damages for the non-delivery of the remainder of the dairy, or more than the said one load of cheese; to which ruling and decision the plaintiff's counsel excepted. The court then directed and instructed the jury to find a verdict in favor of the plaintiff for $10; the damages agreed upon for the non-delivery of the said one load of cheese. And the jury, under the direction of the court, found a verdict in favor of the plaintiff for $10; to which ruling and decision the plaintiff's counsel excepted. And the court ordered and directed that judgment and all proceedings be stayed until the decision of the court upon a bill of exceptions or a case; and that such bill of exceptions or case be heard in the first instance at the general term. The plaintiff appealed.

*A. H. Prescott*, for the appellant.

*J. E. Terry*, for the respondent.

*By the Court*, MULLIN, J. The contract on which this action was brought, as proved on the trial, was that the defendant agreed to sell, and the plaintiff to purchase, the defendant's dairy of cheese—all he had made during the season

before the making of the contract and all he should thereafter make—to be delivered at Oneida depot, the first load within a few days and the remainder when ordered by the plaintiff. The price was 8 cents per pound, payable on delivery. The defendant was to keep the cheese until they amounted to the number of one hundred, if required to do so by the plaintiff.

As the delivery of the cheese and the payment of the price were concurrent acts, to be performed at the same time and place, neither could maintain an action against the other for non-performance, without performance, or a readiness and offer to perform, on his own part. (*Dunham* v. *Pettee*, 4 *Seld.* 508.)

The mere omission to perform at the time and place specified in the contract, releases the other party from the contract; but before the latter can maintain an action for the breach, he must aver and prove that he was ready and willing and offered, at the time and place for performance, to perform on his part. (*Dunham* v. *Pettee*, *supra*.)

Having ascertained what the rights and duties of the parties were, let us in the next place see what was done under the contract. A few days after the making of the contract a load of cheese was delivered upon it, and was paid for by the plaintiff. Subsequently another load was delivered and was paid for at the time of delivery. Thus far the agreement has been fully performed on both sides. On the 9th August the plaintiff's agent went to the defendant's house to examine the cheese, and found it not in a condition to be removed, on account of the heat. The defendant was anxious to have it delivered, but the agent would not consent to a delivery at that time, but promised to call in a few days. He returned on the 22d of August, and learned from the defendant that he had sold the cheese, and actually delivered one load in pursuance of such sale.

The plaintiff was entitled by the contract to the whole dairy. The defendant had put it out of his power to per-

Crist *v.* Armour.

form on his part by delivering the whole, and the plaintiff was thereby released from the agreement. (*Chitty on Contracts*, 427.)

But the plaintiff does not desire to be released. He insists upon performance, or payment of damages for non-performance. In other words, he elects to treat the contract as in full force, and hence he must do what the law requires to be done by him to entitle him to damages from the other party.

As he was bound before the breach to be ready at the time and place of performance to receive and pay for the cheese, so now, after the breach, he must be ready and willing to receive and pay for the cheese, and offer to do so, unless the defendant has by some act of his relieved him from so doing.

There was still another duty which it is probable the plaintiff was bound to perform, and which was a condition precedent to performance by the defendant, and that was to direct when the delivery should be made. The contract does not regulate the time of delivery, but it does provide that the plaintiff may require the defendant to keep the cheese until there are 100 cheeses on hand. And in addition to this, the delivery must be regulated by the season, as it was not safe or proper to deliver new cheese in very warm weather. It is quite clear, therefore, that it was contemplated by the parties, and it is the construction of the agreement, that before the defendant was bound to deliver, the plaintiff must notify him when to do it.

As to the cheese made after the sale by the defendant to some third person, there is no proof of any notice to the defendant as to the time of delivery, and this omission is fatal to the plaintiff's right of action, unless it is excused by the acts of the defendant.

It was conceded on the trial that the defendant was liable for the damages resulting from the non-delivery of the load of cheese sold and delivered on or before the 22d August; indeed there was a verdict rendered for such damages.

The plaintiff had not tendered performance as to the cheese sold and not delivered, nor does he aver that he was ready and willing to receive and pay for that, as distinguished from the residue of the cheese. If he is excused from averring and proving these matters and the defendant is nevertheless liable, it must be because the defendant, by the sale and delivery of the load, had put it out of his power to perform, and thus excused the plaintiff from all further duty in reference to that portion of the cheese.

It only remains to ascertain whether the sale by the defendant excused the plaintiff from averring and proving a notice to the defendant when to deliver the cheese, and a readiness and offer to perform on his own part, at the time and place for the defendant's performance. It has already been stated that the sale of the load of cheese was such a breach of the contract as justified the plaintiff in abandoning it, but did not relieve him from the duty of performance on his part if he desired to recover damages of the defendant for such breach.

The only other act done by the defendant which can be urged as an excuse by the plaintiff for not performing on his side, is the sale of the whole of the cheese made by the defendant and not delivered to the plaintiff. In 2 *Parsons on Cont.* 188, it is said, " If one, bound to perform a future act, before the time for doing it, declares his intention not to do it, this is no breach of his contract; but if his declaration be not withdrawn when the time comes for the act to be done, it constitutes a sufficient excuse for the default of the other party." If the sale to the stranger and the silence of the defendant, when the plaintiff offered to say nothing about the load delivered if he would deliver the residue of the cheese, could be deemed equivalent to a refusal to further perform the contract, then, although that might not of itself be a breach of the contract, yet it was never recalled, and therefore, within the authority cited, the plaintiff had the right to treat the contract as broken. (*Weaver* v. *Halsted,*

Crist *v.* Armour.

23 *Wend.* 66. *Francht* v. *Leach,* 5 *Cowen,* 506. *Ripley* v. *McClean,* 4 *Exch.* 345.)

In the following cases it is held that the mere refusal to perform is not only a breach of the contract, but it gives the other party an immediate right of action for his damages. And he need not wait for the time of performance to arrive before bringing his action. (*Cost* v. *Ambergate R. R. Co.* 6 *Eng. L. & Eq.* 230. *Hochster* v. *De Latour,* 20 *id.* 157, *and cases cited supra.*)

In the following cases it is held that when a party puts it out of his power to perform, before the time for performance arrives, the contract is broken, and the other party is entitled to maintain his action, without proving performance or even a readiness to perform. (*Newcomb* v. *Brackett,* 16 *Mass. Rep.* 161. *Ford* v. *Tiley,* 13 *Eng. C. L.* 188. *Inhabitants of Taunton* v. *Caswell,* 4 *Pick.* 275. *Smith* v. *Lewis,* 24 *Conn. Rep.* 624. *Frost* v. *Clarkson,* 7 *Cow.* 24. *Lovelock* v. *Franklyn,* 55 *Eng. C. L.* 371.)

It would seem to follow from these cases that when either party to a contract which provides for performance by both parties at the same time and place, before the time for performance arrives, notifies the other that he will not perform, and does not before the time for performance recall such notice; or if he puts it out of his power to perform on his part; the other party is relieved from averring, or proving performance, or offer to perform. The defendant in this case had sold the cheese and delivered a part. This put it out of his power to perform, and the result is that the plaintiff could maintain his action for such breach, without averring or proving performance, or a readiness or offer to perform.

It is not shown whether the sale to the stranger was or was not valid. But we must, I think, assume that it was a valid sale; but if once shown to be otherwise, I apprehend the defendant would not be entitled to allege it. This precise point was held in the *Inhabitants of Taunton* v. *Caswell,* (4 *Pick.* 275.)

I am of the opinion that the learned justice erred in limiting the plaintiff's right of recovery to the damages for the load sold and delivered to the stranger, and that the judgment should be reversed and a new trial granted; costs to abide the event.

[ONONDAGA GENERAL TERM, January 5, 1861. *Bacon, Allen, Mullin* and *Morgan*, Justices.]