DAVID WILBER AND DE FOREST WILBER, RESPONDENTS, v. JACOB LEONARD, APPELLANT.

*Rescission of a contract of purchase and sale — evidence thereof.*

After a contract had been entered into for the purchase and sale of hops, the vendee, before the time for the performance of the contract had arrived, wrote to the vendor as follows: "We have examined your hops carefully and find them very uneven. They are also slack, and some of them the flavor has already changed and we are sure some of them will spoil when the trying weather comes. We do not see how we can accept of them under the circumstances. We think you can save them by opening them and spreading them upon a dry floor. The hops do not compare with the sample they were bought by except a few bales; they are very dirty picked, too."

The vendor, after receiving the letter, had an interview with the vendee which justified the inference that the vendor construed the letter as one calling his attention to the condition in which the hops were found by the vendee, and that he did not regard the letter as an absolute refusal to accept the hops, or as a rescission of the contract, or as an abandonment thereof by the vendee. The vendor subsequently attempted to put the hops in proper condition.

*Held,* that, taking the whole language of the letter together and giving due weight to the circumstances mentioned therein, and the situation of the parties in respect to the subject-matter of the contract, and their practical construction of the tenor of the letter, that the trial court properly refused to hold, as a matter of law, that the vendee had rescinded the contract, or committed a breach thereof, or that the vendor was absolved from the obligation thereof.

APPEAL by the defendant Jacob Leonard from a judgment, entered in the office of the clerk of the county of Otsego on the 3d day of December, 1888, and from a judgment, entered in said clerk's office on the 30th day of December, 1889, with notice of an intention to bring up for review upon such appeal an order dated the 26th day of

December, 1889, and entered in said clerk's office December 30, 1889, denying the defendant's motion for a new trial.

The action was brought to recover damages alleged to have arisen by reason of the refusal of the defendant to deliver to the plaintiffs a quantity of hops previously purchased by sample. The answer admitted the purchase and sale, but alleged that the plaintiffs refused to accept the hops.

In November, 1888, at the Otsego Circuit, the plaintiffs recovered a verdict for $1,626.92 damages. In their complaint the plaintiffs allege that on the 28th day of May, 1886, the defendant agreed to and did "sell and deliver to the plaintiffs, at the depot in Maryland, N. Y., all the hops then in the hop-house of the defendant in the town of Maryland, N. Y., being about forty-three bales, or 7,925 lbs., of hops, said hops to be delivered at the depot in Maryland, N. Y., at any time that might be designated by the plaintiffs, and that the plaintiffs should pay to the defendant therefor at the rate of eight and one-fourth cents per pound, and give the defendant the benefit of any rise up to June 20, 1886, payable as follows: Ten dollars at the time of making said agreement and the residue on the delivery of said hops as aforesaid;" also, "It was expressly agreed by the defendant that the said hops so sold to the plaintiffs as aforesaid should correspond in all respects, and were the same as a sample then exhibited by defendant to the plaintiffs, and that said hops would be delivered by the defendant the same in all respects as the aforesaid sample." That the plaintiffs thereupon paid to the defendant the sum of ten dollars in pursuance of the aforesaid agreement." The plaintiffs further allege that they "duly notified the defendant to rebale and deliver said hops at the depot in Maryland, on the 22d day of July, 1886, at which time and place the plaintiffs would be ready to receive the same and pay the balance of the purchase-price thereof; that on the 22d day of July, 1886, at the depot in Maryland, N. Y., the plaintiffs were ready and duly offered to the defendant to receive and pay for said hops pursuant to the aforesaid agreement, and requested the defendant to deliver the same, and otherwise have duly performed all the conditions of the said agreement on their part; that the defendant refused and neglected to deliver said hops, to the damage of these plaintiffs."

In the defendant's answer he admits the partnership of the plaint-

iffs, and alleges that on the 28th of May, 1886, " the defendant agreed to sell to the plaintiffs and the plaintiffs, agreed to purchase from the defendant, the hops mentioned in the complaint," substantially as stated in the plaintiffs' complaint ; and also alleges the payment of the ten dollars earnest money on said agreement, and also alleges " that prior to June 20th, 1886, plaintiffs notified defendant that they would not accept or receive said hops, or any of them, and plaintiffs refused to accept or receive said hops, or pay for them under said agreement."

*E. M. Harris*, for the appellant.

*Burr Mattice*, for the respondents.

HARDIN, P. J. :

From the pleadings and the evidence given at the trial it is conclusively established that on the 28th of May, 1886, there was a valid contract made and entered into between the plaintiffs and the defendant for the hops mentioned in the complaint. Notwithstanding the statute of frauds that contract was valid and binding between the parties. (*Jackson* v. *Tupper*, 101 N. Y., 515.) It is contended by the appellant that before the time for the delivery of the hops the plaintiffs, by the letter of June eighteenth, rescinded the contract ; " and no contract of sale and purchase remained, and the defendant had the right to treat the contract as rescinded." This position was taken in various modes at the trial, and was raised upon the motions for a nonsuit and by a request to the court to charge. The hops when sold were represented to be in accordance with the sample delivered to the plaintiffs, taken by them to their place of business and filed and preserved. Prior to the eighteenth of June the plaintiffs had derived some information or knowledge in respect to the hops in their then condition, and thereupon they addressed a letter, bearing date June 18, 1886, to the defendant, which was in the following language, viz. : " We have examined your hops carefully and find them very uneven ; they are also slack, and some of them the flavor has already changed, and we are sure some of them will spoil when the trying weather comes. We do not see how we can accept of them under the circumstances. We think you can save them by opening them and spreading them upon a dry floor.

The hops do not compare with the sample they were bought by except a few bales; they are very dirty picked, too." It is contended, in behalf of the appellant, that the words, "we do not see how we can accept them under the circumstances," amount to a refusal on the part of the plaintiffs to accept of the hops, or an intentention to rescind the contract, or to refuse to perform the same, or an abandonment of the contract. In considering these questions the whole language of the letter must be borne in mind, and in examining the letter we find that it states that the plaintiffs have examined the hops and "find them very uneven; they are also slack, and some of them the flavor is already changed;" and then they proceed to state in the letter, as a matter of opinion, that they are "sure some of them will spoil when the trying weather comes," and then make use in the letter of the words "we do not see how we can accept of them under the circumstances." A careful inspection of those words indicates that the language used does not convey absolutely a refusal to accept the hops. The plaintiffs were not called upon to accept them on the day of the date of the letter. The time had not expired, mentioned in the purchase contract, for the defendant to have the benefit of the rise in the hops; nor had the plaintiffs given any notice to the defendant of the time when they desired a delivery to be made, they were not, therefore, called upon to make a definite election of an intention to receive or to reject under the contract. They were in a situation where they might kindly and cautiously express an opinion that, in the then situation of the hops, they would not answer the terms of the contract, inasmuch as they would not correspond with the sample exhibited at the time of sale; that idea seems to be derivable from the words "we do not see how we can accept of them under the circumstances." The circumstances referred to in that phrase of the letter evidently related to the supposed condition of the hops mentioned in the antecedent portion of the letter. This construction is favored by the subsequent words found in the letter, to wit: "We think you can save them by opening them and spreading them upon a dry floor." These last words are quite inconsistent with the supposition that the antecedent words were used for the purpose of putting an end to the contract. Before the letter closed the plaintiffs pointed out another circumstance in respect to the hops in the fol-

lowing words: "They are very dirty picked, too." When the
defendant received this letter he sought an interview with the
plaintiffs, which took place at their place of business in Milford;
and if the testimony, which was given in behalf of the plaintiffs,
correctly narrates that interview, it justifies the inference that the
defendant construed the letter as one calling his attention to the cir-
cumstance in which the hops were found by the plaintiffs, and that
he did not regard the letter as an absolute refusal to accept the
hops, or as a rescission of the contract, or as an abandonment
thereof by the plaintiffs. According to the testimony given
in behalf of the plaintiffs, after a considerable discussion, in
which one of the plaintiffs offered one per cent to be released
from the contract, the defendant declined such offer and sought
the opportunity to put the hops in a situation to answer the
requirements of the contract. After a considerable conversation
and negotiation the parties evidently acted upon the assumption
that the contract had not been rescinded, had not been abandoned,
and that the defendant had still further time and opportunity
to put the hops in a proper condition so that they would answer the
requirements of the contract which had been entered into with
the plaintiffs in respect to them. He made his selection of one of the
skilled and experienced hands of the plaintiffs, and fully completed
an arrangement to have him assist in putting the hops in proper
condition. In accordance with that arrangement, the selected hand
went to the defendant's building where the hops were kept, and
bales were opened and the hops were treated and dried and put into
a more satisfactory condition. Taking the whole language of the
letter, and giving due weight to all the circumstances mentioned
therein, and the situation of the parties in respect to the subject-
matter of the contract, and their practical construction of the tenor
of the letter, we are of the opinion that the trial judge properly
refused to hold, as a matter of law, that the plaintiffs had rescinded
the contract, or committed a breach thereof, or that the defendant
was absolved from the terms thereof. As already observed, the
time for the performance of the contract had not matured at the
date of the letter.

In volume 2 of Parsons on Contracts, page 188, it is said: "If
one, bound to perform a future act, before the time for doing it,

declares his intention not to do it, this is no breach of his contract;
but if his declaration be not withdrawn when the time comes for
the act to be done, it constitutes a sufficient excuse for the default
of the other party." This doctrine was quoted approvingly by
MULLIN, J., in *Crist* v. *Armour* (34 Barb., 387).

The appellant calls our attention to *Skinner* v. *Tinker* (34 Barb.,
334), in that case the defendant wrote a letter in its terms clear and
decisive " declining to carry out the agreement on his part." We
do not see that the case aids the appellant. Our attention is called
to *Cornwell* v. *Haight* (21 N. Y., 462). In that case there had
been an absolute refusal to deliver the grain, which refusal worked
a breach of contract, and in the opinion it is said : " It is quite clear
that the defendant had previously made up his mind not to comply
with the contract." We have found nothing in the letter or in the
conduct of the plaintiffs which warrants us in using a similar
observation in this case.

In *Crary* v. *Smith* (2 Comst., 60), " the defendant caused to be
served on the complainant a written notice that he should no longer
occupy the premises, and should refuse to fulfill the contract," and
that was held sufficient to supersede the necessity of a tender of a
deed in order to sustain a bill for specific performance. We think
the case furnishes no aid to the appellant. *Morange* v. *Morris*
(32 How., 178), was a case where a somewhat similiar question
arose in a court of equity ; and in illustrating the rule SMITH, J., said :
" A tender of performance need not be made when it would be wholly
nugatory. For example, if the vendor in the present case *had
expressly notified* the plaintiff before the twenty-first of September
that he would not convey, and, therefore, the plaintiff need not
tender the payment which the agreement required to be made on
that day, he would have been excused from making the tender, as
it would have been an idle ceremony."

In *Graves* v. *White* (87 N. Y., 463), it was held that: " A posi-
tive and absolute refusal by one of the parties to perform a contract
for a purchase and sale of land gives to the other party, as an
alternative remedy, the right to assent to such abandonment, and to
treat the contract as rescinded." When that case was before this
court we held, " that the defendant practically abandoned the con-

tract, and so lost all claim to enforce its specific performance in equity, or to rely upon it as a defense to his possession," and the Court of Appeals approved of the doctrine and said of the rule : " It rests upon a foundation common to all contracts, that two persons who are competent to make a contract are competent to waive or abandon it ; and where both concur in such waiver or abandonment their united assent dissolves the contract, and the rights of each under it are ended. This was long ago held as to contracts respecting personal property  *  *  *  a positive and absolute refusal, a deliberate repudiation of the stipulations of the contract, gives to the other party as an alternative remedy the right to assent to such abandonment and treat the contract as dissolved. In the present case such refusal was proved." We think that case is quite unlike the one before us. Nor do we think *Welsh* v. *Gossler* (89 N. Y., 540) aids the appellant. In that case Finley absolutely refused to receive the sugar which was purchased under a contract requiring it to be shipped in May or June, whereas it was not shipped until July, and the court observed, viz. : " Finley had refused to accept, and they had refused to accept for him. No contract of sale and purchase remained. The omission to ship in June authorized Finley to treat it as rescinded." The case is, therefore, quite unlike the one before us. We think no error was committed by the trial court in refusing, upon the motions for a nonsuit, to hold, as a matter of law, that the letter of the eighteenth of June rescinded the contract between the parties, or that it was conclusive evidence of an abandonment of the contract on the part of the plaintiffs ; nor in refusing to charge the jury, as a matter of law, that the letter operated *per se* to rescind the contract. We think there is no force in the position taken by the appellant that a new contract was made on the twenty-first of June, and that that contract was void by the statute of frauds. In considering all the evidence in the case, we think it was not the intention of the parties to enter into a new contract on the occasion of that interview. They seem on either side to have been more concerned with the actual condition of the hops, and of what could be or should be done to them to bring them into such situation as that they would correspond to the sample which had been furnished to the plaintiffs on the occasion of the contract of sale. Indeed, defendant testifies : " I claimed there was no second contract ; " there

was nothing only the old contract; and he also testifies that in the interview of the twenty-first of June one of the plaintiffs told him how he could put the hops in condition to answer the contract, and that he would send a man over where the hops were to show him how to place them in proper condition, and that ₜthe plaintiff added, viz.: " If they open all right and satisfactory to me, I will take them at the old price. * * * I made no reply to Wilber's saying if the hops were opened and dried and proved to be satisfactory they would take them; I said I would have them opened and save what I could out of them."

In the course of the charge delivered to the jury it was said that if a new contract was made, as nothing was paid thereon, it was void; and that if the jury so found, their verdict should be for the defendant. That instruction was quite as favorable as the defendant was entitled to, and we may properly assume, from the verdict, that the jury found that there was no such new contract made upon the occasion of that interview. As we have already said, we are of the opinion that the evidence is entirely sufficient to warrant the jury in finding that no new contract was made.

We have looked at the rulings made upon the trial and find no prejudicial error therein. We think the verdict should stand.

Judgment and order affirmed, with costs.

MARTIN and MERWIN, JJ., concurred.

Judgment and order affirmed, with costs.