———o—o—o———

## HAWLEY vs. MORTON.

The condition of a bond given to the plaintiff by the defendant, was that the obligor should from time to time and at all times during the life of the obligee, well and sufficiently maintain and keep the obligee, *in the house of him, the obligor,* with meat, drink, clothes and all other things necessary and convenient. The plaintiff, after having left the defendant's house, and sought another home, brought an action upon the bond. *Held,* that the defendant was not bound to clothe or board the plaintiff, any where except in his own house ; that upon the plaintiff's living with him depended her right to require the defendant to board and clothe her. And it not appearing that the plaintiff had sufficient cause for leaving the defendant's house and living elsewhere, it was *further held* the action would not lie.

THIS action was tried before a referee, who found there was due, from the defendant to the plaintiff, at the date of his report, the sum of $180. Judgment was entered on the report

in favor of the plaintiff for $315.56, damages and costs. From this judgment the defendant appealed to the general term.

The action was brought upon a bond in the words and figures following, viz : " Know all men by these presents, that we, Alexander Morton and Esther Morton, of Walton, Delaware county, are held and firmly bound to Charity Hawley, of Walton, of said county, in the sum of five hundred dollars, lawful money of the state of New York, to be paid to the said Charity Hawley, her executors, administrators or assigns, to which payment, well and truly to be made, we bind ourselves jointly and severally, and our executors, heirs, administrators and assigns, firmly by these presents. Sealed with our seals. Dated this 22d day of November, 1848.

The condition of this obligation is such, that whereas the above bounden Alexander Morton and Esther Morton, for and in consideration of the use of a certain farm lying and being in the said town of Walton, which farm the late Harvey Hawley occupied at his death, and of which farm the said Charity Hawley has a right to occupy as long as she lives, for which use they have agreed and undertaken to keep and maintain the said Charity Hawley, during her life : If, therefore, the said Alexander Morton and Esther Morton, their executors or administrators, do, and shall from time to time, and · at all times hereafter, during the natural life of the said Charity Hawley, well and sufficiently maintain and keep, or cause to be well and sufficiently maintained and kept, the said Charity Hawley, in the house of him, the said Alexander Morton, with meat, drink, clothes and all other things necessary and convenient, then this obligation to be void, or otherwise to be and remain in full force and virtue."          [Signed,]

ALEXANDER MORTON. [L. S.]

ESTHER MORTON.     [L. S.]

*Witness*, N. W. WILLIAMS."

The defendant took exceptions to the conclusions of the referee, upon the facts as well as the law. He also excepted to the report of the referee on the ground that it did not find facts. enough to enable the plaintiff to recover, and did not sustain

itself. All other facts sufficient for a correct understanding of the points in the case are contained in the opinion of the court.

*William Gleason, Jr.*, for the plaintiff.

*William Murray, Jr.*, for the defendant.

*By the Court,* BALCOM, J. The bond upon which this action is founded bears date the 22d day of November, 1848. The condition of the same is, that the defendant and his wife shall from time to time, and at all times during the natural life of the plaintiff, well and sufficiently maintain and keep her, or cause her to be well and sufficiently maintained and kept, "in the house of him," the defendant, "with meat, drink, clothes and all other things necessary and convenient." The action was tried before a referee, who found that the plaintiff was supported by the defendant, in his house as one of his family, with board and clothing, for about one and one-fourth years after the giving of the bond, when she left the defendant's house, and has not since returned there to remain with him, and since which time the defendant has contributed but little to the plaintiff's maintenance and support. The referee also finds that the plaintiff did not live very happily with her daughter, who was the defendant's wife ; that they had some hard words, and that the best of feeling did not exist between them ; that the plaintiff was an elderly woman and preferred to live with a younger daughter, where her residence has been more agreeable. That from the facts proved it required a good deal of forbearance on the part of the defendant, which had not been exercised towards the plaintiff ; *but who was at fault in the family controversy he did not think it necessary to determine,* inasmuch as he found that the plaintiff was justified in seeking other sources to provide herself with raiment. The referee also thought the facts proved might justify him in reporting in favor of the plaintiff for her board ; but he says that seemed never to have been required of the defendant, or asked, or demanded. He also states that so far as clothing is concerned he does not think that the

defendant fulfilled his contract; that in this respect the bond had been broken. Also that he was inclined to make a distinction between the clothes and board, holding the defendant responsible for the former, and not for the latter. The referee found as matter of law that the defendant was liable on the bond for four and seven-twelfths years clothing, with interest, after deducting some articles furnished by the defendant, amounting to the sum of $180; for which sum the plaintiff has entered judgment against the defendant, with costs.

It might be inferred from the tenor of the decision of the referee, that he was of the opinion the plaintiff was justified in leaving the defendant's house, by reason of improper conduct towards her on the part of the defendant or his family, if he had not expressly stated that he did not think it necessary to determine who was " at fault in the family controversy." This is the most important point in the case; for the defendant never expressly refused to furnish the plaintiff with clothing, if she would live at his house. The bond only obligated the defendant to sufficiently maintain and keep the plaintiff, *in his house,* " with meat, drink, clothes and all other things necessary and convenient."

Assuming, as we must, that the referee has not found that the defendant ever refused to board or clothe the plaintiff, provided she would live in his house, his finding of facts does not sustain his conclusions of law, unless the defendant was obliged to clothe the plaintiff wherever she chose to live, if she sent for, or called for her clothes at the defendant's house. I am of the opinion the defendant was under no such obligation. He agreed to furnish the plaintiff with board and clothing *in his own house* and not elsewhere. The plaintiff was to live with the defendant, and upon her living with him depended her right to require him to board and clothe her, and I can see no ground for the distinction taken by the referee between the board and clothing. (*See Pool* v. *Pool,* 1 *Hill,* 580; *McKillip* v. *McKillip,* 8 *Barb.* 552; 17 *id.* 410.)

If the plaintiff left the defendant's house without sufficient cause therefor, the defendant was under no obligation to furnish

her with either clothes or board. But if the conduct of the defendant or his family towards the plaintiff was such as to make it improper for her to remain in the defendant's house, it was a breach of the condition of the defendant's bond, and the plaintiff had the right to leave there and procure board and clothes elsewhere, and charge the defendant for the same. And under such circumstances no demand of board or clothing of the defendant was necessary. But as the referee has not found that the plaintiff had sufficient cause for leaving the defendant's house and living elsewhere, but expressly held it was not necessary to pass upon that question, the judgment in the action must be reversed and a new trial granted, costs to abide the event.

