Loomis *v.* Loomis.

———————————◇———————————

AMY LOOMIS *vs.* EDWIN D. LOOMIS, executor, &c.

L., by an ante-nuptial agreement executed by him and A., his intended wife, bound himself, his administrators and executors, to give A. "a good and sufficient maintenance during her natural life." *Held* that A., after the death of L., had a right to choose her place of residence; and that the executor of L. had no right to control her choice, or to refuse to provide for her support unless she would reside at his own house and with his own family, or at the house of another person specified by him.

THE plaintiff was the widow of Hezekiah Loomis, deceased. Her maiden name was Amy Palmer. She made an ante-nuptial agreement with the deceased in the words and figures following, viz:

Loomis *v.* Loomis.

" A memorandum of agreement between Hezekiah Loomis, of Cazenovia, and Amy Palmer, of Nelson, both of New York, about to enter upon the marriage covenant, do both agree that in order to do justice and avoid difficulty hereafter, we enter into a joint agreement, and do agree to abide by the following articles as follows, viz: I, the said Hezekiah Loomis, do agree to bind myself, my administrators, executors, to give the said Amy Palmer a good and sufficient maintenance during her natural life; this is a substitute for the law. I, Amy Palmer, do cheerfully accept and bind myself to abide by the above provision made by said Loomis. In case the said marriage takes place, this article remains in full force; otherwise null and void. Hereto we set our hands and seals the 24th day of August, 1854.

Hezekiah Loomis. [L. S.]

Amy Palmer. [L. S.]"

The plaintiff was married to the said Hezekiah Loomis immediately after the execution of said agreement; and they lived together as husband and wife until the 27th day of May, 1858, when said Loomis died. He left a will in which the defendant was named as executor. It did not appear that the plaintiff had any children by the deceased, and she was not named in his will. The deceased owned real and personal property, at the time of his death, of the value of $4000 or $5000.

The defendant offered to support the plaintiff at his own house; but the plaintiff would not go there, and procured her board and clothing elsewhere. She brought this action to recover the value of her maintenance from the 1st day of October, 1858, to the 14th day of June, 1859. The action was referred to a referee to hear and determine, who found that the reasonable cost and expense of supporting and maintaining the plaintiff during said time, exclusive of clothing, was $73, and that the cost of clothing her during such time was $10, making in all $83.

The referee further found that the plaintiff, prior to the

commencement of the action, applied to the defendant as executor, and demanded of him that he should provide and pay for her support and maintenance, under and in pursuance of said ante-nuptial agreement. That the defendant offered to support and maintain the plaintiff at his own house and with his family, but refused to provide or pay for her support and maintenance at any other place. That the plaintiff refused to live with the defendant, and on the 25th day of October, 1858, notified him that she refused to live with and be supported in his family, and claimed the right to elect where she would reside, and insisted that the defendant was bound to pay for her support and maintenance, under and in pursuance of said ante-nuptial agreement.

The defendant had refused to refer the plaintiff's claim to referees, to be approved by the surrogate.

The referee decided that the plaintiff was entitled to recover $83 damages, besides costs. After judgment was entered on the referee's report, in favor of the plaintiff, the defendant appealed therefrom to the general term of the court.

The defendant's counsel contended that the evidence showed the defendant offered to board and maintain the plaintiff at Orlando Loomis', where she and her husband lived prior to and at the time her husband died.

*W. H. Kinney,* for the plaintiff.

*D. W. Cameron,* for the defendant.

*By the Court,* BALCOM, P. J. The only material question in this case is whether the defendant, as executor of Hezekiah Loomis, deceased, was bound to provide the plaintiff "a good and sufficient maintenance," at any place other than in his own house or in that of Orlando Loomis.

The plaintiff was bound by the marital tie to live with her husband wherever he resided during his life; and the ante-nuptial agreement did not require him to support her else-

where. But neither the agreement itself, nor any surrounding circumstances, indicate that the plaintiff was to be maintained at any particular place after the decease of her husband. Her husband was under no obligation to make a will; and he could have devised his estate to strangers, subject to the right of the plaintiff to have her support out of it, and appointed an executor who had no interest in it. The will he made is silent as to where or how the plaintiff should be maintained. In *Pool* v. *Pool,* (1 *Hill,* 580,) the defendant's covenant was to "keep and maintain" the plaintiff's two infant children until they should respectively arrive at the age of twenty-one, "in a manner suitable for the plaintiff to provide for them in case he should live and had not conveyed away his property;" and it was held that the defendants were only bound to provide for the infants as members of their families. In *Hawley* v. *Morton,* (23 *Barb.* 255,) the condition of the bond given to the plaintiff by the defendant was, that the obligor should, from time to time and at all times during the life of the obligee, well and sufficiently maintain and keep the obligee *in the house of him, the obligor,* with meat, drink, clothes, and all other things necessary and convenient; and it was held that the defendant was not bound to clothe or board the plaintiff any where except in his own house. In *Converse and others, Superintendents of the Poor,* v. *McArthur,* (17 *Barb.* 410,) the court of sessions had made an order that the defendant should support his mother at his own house, or in default thereof he should pay so much per week. He supported her at his house about one year, and then she left him without any just cause. And the court held, the defendant was not liable for the support of his mother after she left his house. The case of *McKillip* v. *KcKillip* (8 *Barb.* 552) is nearer like this than either of those I have mentioned; but if it was correctly decided, I think it is distinguishable from this. In that case the obligor was bound to maintain, support and clothe Archibald McKillip (the obligee) and his son James, *who was ill and*

Loomis *v.* Loomis.

*deprived of his reason,* during their natural lives, and during the natural life of the longest liver of them, and furnish good and sufficient nursing and medical attendance, washing and lodging, both in sickness and health, for each of them during the term aforesaid; and the court held, that the obligor was only bound to maintain and support the obligee and his son, at his own dwelling house; provided it could there be done in a suitable manner, which would be presumed; and that after the decease of the obligor, the family residence, so long as it should be maintained, was the place of support. It will be observed, the bond in that case was not only that the obligor would maintain and support the obligee, but also his crazy son James, who could not elect how or where he would be supported or kept. And I think the tenor of the bond in that case, in other respects, differs from the agreement in this. I therefore need not say whether I think that case, so far as it bears upon this, was correctly decided.

In this case the deceased bound himself, his administrators and executors, "to give the said Amy Palmer (the plaintiff) a good and sufficient maintenance during her natural life." In other words, he covenanted to provide such a maintenance for her. In *Tolley* v. *Greene* (2 *Sandf. Ch. Rep.* 91) the testator used this language, viz: "It is my will and order that my beloved wife Rebecca have a decent and comfortable support and maintenance out of my estate, in sickness and in health, during her lifetime, in lieu of her dower right which she might claim out of my estate." A son of the testator was his sole executor. After the decease of the testator and his executor, a suit in equity was brought by the widow to have a sufficient sum set apart from the estate of the testator, and secured for her support and maintenance during her life, according to the bequest in the will. Her husband left only two children who took some $35,000, subject to her support. The assistant vice chancellor held she was entitled to be supported and maintained in housekeeping, in a plain and

economical manner, at the place of her residence; and directed that she should have $600 a year secured to her for that purpose.

I know of no adjudged case at all analogous to this, except those to which I have alluded; and neither of them, nor any legal or equitable principle, that I am aware of, requires us to hold that the plaintiff should live with the defendant or be supported at any particular place designated by him.  And if the deceased was a wise man and loved the plaintiff when he married her, he could not have desired or intended she should live in the family of his executor, against her wishes, or at any other place where she would not be contented, after his disease.  But I need not attempt to show how unhappy widows often are, who are compelled to live with devisees or legatees, or children or step-children, whose interests are that the days of their beneficiaries "should be dwindled to the shortest span."  This case requires nothing of the kind.  The agreement in question does not compel the plaintiff to live at any particular place, or give the defendant, as executor, any control over her choice of a residence. I think the referee was right in holding that the plaintiff could choose her place of residence.  She was and is entitled to "a good and sufficient maintenance;" which is, such board and clothing, and other support, as her husband provided for her during his life; for it will be presumed, without proof to the contrary, that was suitable to her condition.  And as the referee has only allowed her for that, or in other words, has only required the defendant to make her compensation for that during the period which he refused to provide the same for her, unless she would live with him, or Orlando Loomis, his decision was correct; and the judgment entered thereon should be affirmed with costs.

Decision accordingly.

[BROOME GENERAL TERM, January 28, 1862. *Balcom, Campbell* and *Parker*, Justices.]