BENJAMIN EMPIE, Respondent, *v.* GEORGE H. EMPIE and Others, Defendants; REUBEN L. EMPIE and ALFRED J. OVERPAUGH, Appellants.

*Contract — agreement by a grantee of a farm to support the grantor — it is an entire continuing contract — damages recoverable upon its breach — the grantor may choose his place of residence — statement as to proof not given which calls for a reply from the opposite party.*

An agreement, by which, in consideration of the conveyance of a farm, the grantee executes a bond binding himself to support and maintain the grantor and his wife, and to furnish them medical attendance during their respective lives, and, on their death, to pay all funeral expenses and erect suitable monuments, said obligation being made a lien upon the premises so conveyed, is an entire continuing contract, and, upon a breach thereof, the grantor may recover not only the expenses of support to the time of the trial of an action to recover damages because of such breach, but also prospective expenses during life, for the purpose of estimating which, the Northampton tables are competent evidence upon the question as to the duration of life.

A grantor in such a case, where no place is specified in which he is to be maintained and supported, may, as a general rule, live where he chooses, provided his choice does not involve needless expense; and he is not obliged to live with the family of a subsequent grantee of the premises.

*Semble*, that such subsequent grantee holding the farm subject to the lien of the bond given by his grantor might properly perform the covenants of the latter in satisfaction of such lien.

Where the plaintiff in an action states upon the trial thereof, before resting his case, "that unless there was to be a controversy in the testimony over the questions of monument, funeral expenses and doctor's bill and board, * * * he

would not introduce further testimony on those subjects," the defendant is called upon to object to the submission of the matter in that way, if he desires to controvert a claim for such expenses.

APPEAL by the defendants, Reuben L. Empie and another, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Schoharie on the 22d day of April, 1898, upon the report of a referee.

On the 20th day of February, 1882, the plaintiff and his wife Mary conveyed to the defendant George H. Empie his farm in the county of Schoharie, N. Y., worth $6,000, and the personal property thereon. Such conveyance was made subject to a certain bond on the same day executed by the grantee to the grantors for the sum of $2,000, which was the only consideration of said deed, and which, among other things, provided that said George H. Empie should support and maintain said Benjamin and Mary Empie, and furnish them medical attendance during their respective lives; on their decease, pay all funeral expenses, and erect suitable monuments over their graves. Said obligation was made a lien upon the premises so conveyed by said Benjamin and Mary Empie to said George H. Empie; and, in case of the failure of the latter to comply with its terms and conditions, the former were authorized to sell the said premises, or any part thereof, and out of the proceeds to pay all costs and expenses of such sale, and the amount that should be due for such support and maintenance, and dispose of the surplus according to the usual practice in such cases.

Mary Empie died on the 5th day of March, 1889. Benjamin Empie lived with his son George until April 20, 1897. During this fifteen years the latter complied with the conditions of the covenants contained in said bond. At that time he had become insolvent, had executed a mortgage on said farm to the defendant Alfred J. Overpaugh for $4,000, and one to the defendant Reuben L. Empie for $1,485, and on the 30th day of March, 1897, had conveyed to the latter said premises by warranty deed, subject to the said two mortgages, the payment of which the grantee assumed. Said deed was not made subject to the lien of the plaintiff under said bond, and the covenants contained therein were not assumed by the defendant Reuben. At the time mentioned, the 20th day of April, 1897, George H. Empie informed the plaintiff that he could

not carry out the obligations of said bond any longer.   He testified on the trial as follows : " I can't tell the day when I told him, my father, I could not perform the obligations of the bond any longer.   I said I would not support my father or carry out the obligations of the bond ; I said it in 1897 ; I said it about the first of April, 1897 ; it was after I had given the deed of the farm to Reuben ; I said it in our kitchen ; it was true when I said I would not support my father any longer ; I did not do anything for him."

In consequence of the refusal of his son George to further perform the contract, the plaintiff left the premises about April 30, 1897, and commenced living with one Edmund De Wire.

The action was commenced by the service of a summons on Reuben L. Empie on May third ; on George H. Empie on May fourth, after he had left the premises in question, and on the defendant Overpaugh· on May 5, 1897, to foreclose plaintiff's lien on said premises under said deed and bond, the plaintiff claiming that on account of the breach of the covenants contained in the bond by the defendant George, the sum of $2,000 was due to him.

The referee before whom the action was tried directed judgment in favor of the plaintiff, determining his damages at the sum of $849.80, made up of the following items :

| | | |
|---|---:|---:|
| " For board, care, washing and mending, and use of horse. | $540 | 80 |
| Medical attendance, prospective | 30 | 00 |
| Monument for Benjamin and Mary Empie | 100 | 00 |
| Clothing from the commencement of this action, and prospective | 104 | 00 |
| Funeral expenses of Benjamin Empie | 75 | 00 |
| Total | $849 | 80 " |

The referee directed a sale of said premises, and that the plaintiff be paid out of the proceeds said sum of $849.80 and the costs of the sale.

From the judgment entered on the referee's report the defendants Reuben L. Empie and Alfred J. Overpaugh appeal.

*L. W. Baxter*, for the appellants.

*G. H. Hiller* and *G. M. Palmer*, for the respondent.

PUTNAM, J. :

When this action was commenced in May, 1897, George H. Empie, being insolvent, had given notice to the plaintiff that he could not further carry out the obligations contained in the bond that he executed in 1882, which provided for the support and maintenance of his father. In pursuance of that notice the plaintiff had removed from the farm he had conveyed to his son, to the premises of Edmund De Wire, and made an arrangement with the latter for his support and maintenance. Hence there was a breach of the conditions of the bond by the obligor. The doctrine applicable to such a case is well stated in *Frost* v. *Knight* (L. R. [5 Exch.] 322; 7 id. 111), as follows : " The law with reference to a contract to be performed at a future time, where the party bound to performance announces prior to the time his intention not to perform it, as established by the cases (citing them), may be thus stated : The promisee, if he pleases, may treat the notice of intention as inoperative, and await the time when the contract is to be executed, and then hold the other party responsible for all the consequences of non-performance. * * * On the other hand, the promisee may, if he thinks proper, treat the repudiation of the other party as a wrongful putting an end to the contract, and may at once bring his action as on a breach of it ; and in such action he will be entitled to such damages as would have arisen from the non-performance of the contract at the appointed time, subject, however, to abatement in respect of any circumstances which may have afforded him the means of mitigating his loss." The principle thus stated was approved in *Howard* v. *Daly* (61 N. Y. 362, 375). (And see *Hochster* v. *De La Tour*, 2 El. & Bl. 678; *Windmuller* v. *Pope*, 107 N. Y. 674, 675; *Wills* v. *Simmonds*, 8 Hun, 189, 202; *Crist* v. *Armour*, 34 Barb. 378; *Bernstein* v. *Meech*, 130 N. Y. 354, 358.)

When the action was commenced, the plaintiff, over eighty-eight years of age, having conveyed his farm to his son, in consideration of the obligation of the latter to support and maintain him during his life, and having been notified by his son that he could not further perform the obligations contained in said bond, had been compelled to make an arrangement for his board and maintenance elsewhere. Having no means, he was necessarily compelled to make an arrangement for his support, on credit. He had left the farm and the

house of George H. Empie in consequence of the refusal of the latter to perform his contract, and had incurred an obligation for his board and maintenance, which, under the covenants contained in the bond, his son George was obliged to furnish. Clearly there was a breach of the condition of the bond by the obligor which authorized the maintenance of the action.

Nor was the plaintiff compelled to wait until some debt had accrued for his maintenance, and commence an action therefor, and afterwards to commence successive actions as claims for his board and maintenance accrued. It has been held that such a contract as that entered into by the defendant George H. Empie with his father, is an entire, continuing contract, and upon a breach, the obligee may recover, not only the expenses of support to the time of trial, but also prospective expenses during life, and for this purpose the Northampton tables are competent evidence upon the question as to the duration of life. (*Schell* v. *Plumb*, 55 N. Y. 592 ; *Wakeman* v. *Wheeler & Wilson Mfg. Co.*, 101 id. 205, 212 ; *Shaffer* v. *Lee*, 8 Barb. 412.)

The finding of the referee, " That the said Reuben L. Empie, ever since he received the deed of said premises as aforesaid, has been ready, able and willing, and repeatedly offered to support his father, the said Benjamin Empie, and to fulfill all the conditions of the said bond, and now offers so to do," did not prevent the maintenance of the action. This finding should be read in connection with another, viz.: " That plaintiff stayed on the farm till the 30th day of April, 1897, when he was moved to De Wire's, in an adjoining town, and has lived there since, and now lives there, having been away a few times at intervals a short time each. That neither George or Reuben have contributed or done anything, or promised to pay anything towards his support or maintenance." The latter finding is based on the evidence, which shows that, when the defendant Reuben offered to support his father, it was in his own family, where the plaintiff evidently did not desire to live. Nor was he compelled to. It is well settled that " Under a general obligation to maintain and support another, where no place is specified, the beneficiary may, as a general rule, live wherever he chooses, provided his choice does not involve needless expense." (*McArthur* v. *Gordon*, 126 N. Y. 597, 610 ; *Loomis* v. *Loomis*, 35 Barb. 624.)

Even if it could be held that under the contract the plaintiff was compelled to live with his son George, on the refusal of the latter to carry out the covenants contained in his bond, there was no obligation on the part of the plaintiff to make his home with the defendant Reuben L. Empie. There is no evidence in the case, or claim, that the latter ever offered to pay for the board of the plaintiff at De Wire's, or to furnish any other place in which he might reside.

It does not appear that Reuben was under any obligation to support his father. In the deed from his brother he did not assume the obligation of George in that regard. In fact, the deed contains a warranty on the part of George against the plaintiff's claim under the bond. Nor does the evidence disclose the fact that any contract was made between the brothers whereby Reuben became legally bound to carry out the obligations of George contained in the bond. We are not prepared to say, however, that Reuben was not authorized to fulfill those obligations. His position was like that of one owning premises subject to a mortgage, the payment of which he had not assumed, and who, although not personally liable thereunder, might pay the mortgage. So the defendant Reuben, owning the farm in question subject to the lien of the bond given by his grantor for the support and maintenance of the plaintiff — such bond being an incumbrance on his said farm — might probably perform the covenants of George in said contract in satisfaction of such lien. But it was for him to show such performance. As we have seen, the plaintiff was not compelled to take up his residence with him. After George had declined to further support his father, if not before, the plaintiff was at liberty to select his own place of residence. The referee finds that since the thirtieth day of April the defendant Reuben has not contributed or done anything, or promised to pay anything, to support the plaintiff, and the evidence shows that the only offer he made to maintain the plaintiff was to do so at his own residence. Had the defendant Reuben desired to fulfill the obligations of his brother contained in the bond, he could have offered to pay the bill of De Wire for such board and maintenance of the plaintiff, or to have procured for the latter some other suitable place in which to reside. Failing to show any such offer, he has failed to show performance of the covenants in the bond on his part.

We have entertained some doubt as to the propriety of the allowance of the following items: "Medical attendance, prospective, $30.00;" "Monument for Benjamin and Mary Empie, $100.00;" "Funeral expenses of Benjamin Empie, $75.00." No evidence was given in regard to those items, but on the trial, "Just before plaintiff rested, counsel for plaintiff stated that unless there was to be a controversy in the testimony over the questions of monument, funeral expenses and doctor's bill and board, and as the referee had been surrogate for many years, and must be familiar with the value of such things, he would not introduce further testimony on those subjects. Defendant's attorney made no reply." The plaintiff, therefore, proposed that the referee, who had formerly held the office of surrogate, and was necessarily familiar with the sums usually and properly allowed for funeral expenses, tombstones and physicians' bills, should determine the proper amount to be allowed the plaintiff therefor. We are inclined to think that when the proposal was made the defendants were called upon to object to the submission of the matter to the referee in that way if they desired to do so; that their silence implied consent, and hence that the items in question must be deemed properly allowed.

We are of opinion that the complaint was sufficient to authorize the judgment directed by the referee. It sets up the conveyance by the plaintiff to George H. Empie, the substance of the bond executed to the latter, the failure of the obligor to comply with its terms and conditions, and although it claims that the damages sustained by the plaintiff in consequence of the breach of the conditions of the bond of the obligor were the sum of $2,000, the allegations in the pleading are sufficient to allow a recovery for such damages as the plaintiff was able on the trial to show he had sustained.

The judgment should be affirmed, with costs.

All concurred.

Judgment affirmed, with costs.