GEORGE C. BANTA, Appellant, *v.* PETER N. BANTA, Respondent.

*Agreement by a party to give at his death property to a relative if the latter would reside with him — how enforced on a breach thereof where the Statute of Frauds is not pleaded as a defense — difficulty of determining the damages — Northampton tables as evidence — the three remedies of a servant improperly discharged.*

Peter N. Banta, who lived on a farm in Saratoga county, N. Y., made a verbal agreement with his brother, George C. Banta, who resided with his wife in Watervliet, N. Y., by which he agreed that if the said George C. Banta and his wife would reside with him while he lived, he would give the said George C. Banta the farm when he got through with it, together with a sum sufficient to buy another farm equally good, and, in addition thereto, would furnish the said George C. Banta and his wife with board and would provide them with money to buy clothing and other supplies and a reasonable amount of spending money. Peter N. Banta stated that he expected George C. Banta to take the worry of the farm off his hands and that he expected the wife of the said George C. Banta to take charge of the household.

In November, 1900, George C. Banta and his wife took up their residence with Peter N. Banta and continued to perform the contract until June 6, 1902, when Peter N. Banta wholly repudiated the contract and required George C. Banta and his wife, who were wholly without fault, to remove from the premises.

George C. Banta thereupon brought an action against Peter N. Banta alleging his employment by the defendant and his wrongful discharge and demanding damages for the breach of the contract. The defendant interposed an answer which was substantially a general denial and which did not set up the Statute of Frauds. The court dismissed the complaint on the ground that the contract was void under the Statute of Frauds and that consequently no recovery could be had except upon a *quantum meruit,* and that as the value of the services had not been shown the plaintiff could not recover upon that theory.

*Held,* that as the Statute of Frauds had not been pleaded by the defendant, it was improper for the court to dismiss the complaint upon the ground that the contract was void under that statute;

That, without determining whether the contract was void under the Statute of Frauds, it was otherwise sufficiently valid and sufficiently definite in the work to be performed and in the compensation to be paid therefor to be enforcible;

That the fact that the nature of the contract was such that it was difficult to determine with accuracy the damages which the plaintiff had sustained on account of the breach thereof was not alone sufficient to defeat the plaintiff's recovery;

That one of the facts to be taken into consideration in determining the plaintiff's damages was the probable duration of the defendant's life, and that the Northampton tables, although not conclusive, were competent evidence upon that subject.

Where a person performs services under a void contract or one which cannot, for any reason, be enforced, his recovery therefor should be measured by the value of the services performed.

A servant who has been wrongfully discharged may choose one of three courses: *First,* he may consider the contract as rescinded and recover on a *quantum meruit* what his services were worth, deducting what he had received for the time during which he has worked. *Second,* he may wait until the end of the term and then sue for the full amount less any sum which the defendant may have a right to recoup. *Third,* he may sue at once for a breach of the contract of employment.

APPEAL by the plaintiff, George C. Banta, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of Saratoga on the 13th day of December, 1902, upon the dismissal of the complaint by direction of the court after a trial at the Saratoga Trial Term.

The parties to this action are brothers, the defendant being about seventy-seven years of age and the plaintiff about sixty-four years of age. The defendant resides and has resided for many years upon a farm owned by him and known as the Banta homestead, at Clifton Park, in the county of Saratoga. In 1900 the plaintiff lived with his wife in Watervliet, and was employed in the Watervliet Arsenal. His wife, Anna M. Banta, was employed at collar stitching. On the 20th day of April, 1900, the defendant's wife died, and he wrote to the plaintiff requesting him with his wife to attend the funeral at Clifton Park on April 23, 1900. They did attend the funeral, and just as they were about to leave for their home the defendant said to the plaintiff, " How would you and Anna like to come and live with me while I live?" The plaintiff replied, " I don't know. What inducement have you to offer; what proposition have you to make?" and the defendant replied, "I am

all broken up and I don't know what to say or do." The plaintiff suggested to the defendant that he think it over, and further stated that he (the plaintiff) would do the same, and come up and see him (the defendant) again. Plaintiff did go to see the defendant again, in about ten days, and the defendant then said to him that he had about concluded to keep the woman who had been the nurse for his wife as his housekeeper. The plaintiff invited his brother to come and see him and returned to Watervliet.

In the latter part of May the defendant and said nurse came to Watervliet and remained with the plaintiff from Saturday until Monday, and when the defendant left he said to the plaintiff, "George, I wish you would come up shortly, I want to talk that matter over with you again and thoroughly, and think we can arrange something." Subsequently plaintiff received a letter from the defendant dated July twenty-eighth, in which he says among other things, "If yourself & wife would like to come up we will do as well as we can & all take hold and git along." Plaintiff and his wife each obtained from their employers a vacation of one week and went to the defendant's August first, and the following morning a conversation occurred between the plaintiff and defendant, at which plaintiff's wife was present, the principal part of which, as related by the plaintiff, is as follows: "He said, 'George, how would you and your wife like to come here and stay with me while I live?' I said, I don't know, Peter. What kind of a proposition have you got to make? He says, 'I will give you this farm when I get through with it, and more than that, I will give you money enough to buy another equally good.' I says, Peter, what is the farm worth? He says, 'it is worth eighteen or twenty thousand dollars of any man's money.' * * * I said, we have got to be maintained in some way while this thing is going on if we accept it. He says, 'in addition to that I will give you your board and money enough to buy your clothing and supplies, and a reasonable amount of spending money.' I says, that looks reasonable enough, and I said to Anna, how do you like that? That was in his presence. She said, 'that looks like a very favorable proposition.' I said, then, Peter, let us see if we understand each other; you promise me the farm. He said, 'yes;' and an additional sum to buy another farm equally good? 'Yes.' And in addition to

that our maintenance in the way of board, and money to buy cloth-
ing and other supplies and a reasonable amount of spending money.
I am very much inclined to accept it, and if Anna is agreed, we will
accept your proposition. My wife said she was agreed to it. I
said Peter, we will take your proposition just as you make it.
Peter jumped up from his chair and slapped his hand and says,
' George, I am glad I am settled, and I hope that sometime in the
near future you will take the worry of this farm off my hands.' I
says, Peter, I will do the best I can to take that worry or any
other. * * * He said my wife was expected to be his house-
keeper and take charge of his household, the only woman there."

Plaintiff's wife remained at the defendant's house from that day,
and the plaintiff, by agreement, returned to his work in Watervliet
and continued there until November nineteenth, when the time for
which the man then working on the farm had been engaged expired,
at which time the plaintiff came permanently to live with the defend-
ant. In the meantime, plaintiff and his wife removed their furni-
ture and household effects from Watervliet to the house of the
defendant, and each gave up their employment in Watervliet.
Plaintiff and his wife continued in the household of the defendant
in the performance of said contract until June 6, 1902, when the
defendant wholly repudiated the contract, and the plaintiff and his
wife were required to immediately remove from the premises. The
contract was broken by the defendant wholly without fault on the
part of the plaintiff. The plaintiff at once brought this action
against the defendant, alleging his employment by the defendant
and his wrongful discharge, and demanded damages for the breach
of the contract.

The defendant's answer is substantially a general denial. The
Statute of Frauds is not pleaded. During the time that the plain-
tiff and his wife were so engaged in the performance of the contract
he repeatedly asked the defendant for money to buy clothing and
other supplies and for spending money, but the total amount received
by the plaintiff and his wife during the time of their part perform-
ance of the contract was ninety-seven dollars and one cent.

On the trial of the action plaintiff gave testimony as to the con-
tract and his part performance thereof, and of his wrongful dis-
charge on the 6th day of June, 1902, with the circumstances sur-

rounding his employment and discharge, and rested. The defendant moved to dismiss the complaint.

The Statute of Frauds was not suggested as an objection to the introduction of testimony relating to the contract, or as a reason why the complaint should be dismissed. The court in dismissing the complaint stated as the reason therefor that the contract was void under the Statute of Frauds, and that consequently no recovery could be had except on a *quantum meruit,* and as the value of the services had not been shown the plaintiff could not recover.

*James W. Verbeck,* for the appellant.

*Jacob W. Clute* and *Edgar T. Brackett,* for the respondent.

CHASE, J.:

The trial court dismissed the complaint at the close of the plaintiff's evidence without making any findings of fact. As said in *Lindenthal* v. *Germania Life Ins. Co.* (174 N. Y. 76): "The learned trial judge virtually decided that the plaintiff had not produced any proof at the trial sufficient to call upon the court to consider it and determine the facts in issue one way or the other." The evidence is undisputed and plaintiff is entitled on this appeal to the most favorable consideration that can be given to the facts presented by him.

Where a person performs services under a void contract or one that cannot for any reason be enforced, his recovery therefor should be measured by the value of the services performed. (Suth. Dam. [2d ed.] § 684 ; 20 Am. & Eng. Ency. of Law [2d ed.], 48.)

The complaint was dismissed by the trial court upon the assumption that the contract could not be enforced by reason of its being void within the provisions of the Statute of Frauds (Laws of 1896, chap. 547, § 224; Laws of 1897, chap. 417, § 21). In this assumption the trial court was in error because the Statute of Frauds had not been pleaded by the defendant. The question of the effect of the Statute of Frauds upon the contract was not before the trial court and is not before this court. If the defendant had desired to insist that the contract was not enforcible by reason of the Statute of Frauds, he should have so stated in his answer, and the objection should have been made by him when the plaintiff's

evidence was offered and also when he asked that the plaintiff's complaint be dismissed.

In *Matthews* v. *Matthews* (154 N. Y. 288) the defendant had objected to proof of an oral contract on the ground that the same was void by the Statute of Frauds, which objection had been overruled, and the court said, " Subsequently to the decision of the former appeal in this case (133 N. Y. 681) the case of *Crane* v. *Powell* (139 N. Y. 379) came before the court in which the controverted question was whether in an action on an oral contract within the Statute of Frauds where the complaint did not disclose the nature of the contract, whether oral or written, it was necessary for the defendant to plead the statute in order to avail himself of the objection. The question was distinctly decided in that case, and it was held that the statute was a defense, and unless pleaded was not available to the defendant to defeat the action. The case must be regarded as settling the law of this State upon a question upon which courts of different jurisdictions have differed in opinion. This court regarded the rule adopted in *Crane* v. *Powell* as sound in principle and as supported by the rule applied in analogous cases. It is plain upon the view that the Statute of Frauds does not make an oral contract within its terms illegal, but only voidable at the election of the party sought to be charged, that such election must be manifested in some affirmative way. The mere denial in the answer of the contract alleged in the complaint, when the character of the contract is not disclosed, is quite consistent with an intention to put in issue simply the fact whether any agreement was entered into, either oral or written."

The opinion in *Matthews* v. *Matthews* has been frequently cited with approval by the Court of Appeals and by the several Appellate Divisions in this State. (*Sanger* v. *French*, 157 N. Y.. 213; *Honsinger* v. *Mulford*, Id. 674; *Hardt* v. *Recknagel*, 62 App. Div. 106; *Miller* v. *Munroe*, 59 id. 623; *Geneva Mineral Spring Co.* v. *Coursey*, 45 id. 268; *Crough* v. *Nurge*, 44 id. 19.)

Taking the plaintiff's evidence in its most favorable light it shows a contract for services as therein stated for which defendant was to give to the plaintiff his farm when he got through with it, and money enough to buy another farm of equal value. We do not decide whether such contract is void under the Statute of Frauds.

It is otherwise valid and sufficiently definite and certain in the work to be performed and in the compensation to be paid therefor to be enforcible. (*Matthews* v. *Matthews, supra ;* *Schell* v. *Plumb,* 55 N. Y. 592; *Erwin* v. *Erwin,* 44 N. Y. St. Repr. 6; affd., 139 N. Y. 616; *Healy* v. *Healy,* 55 App. Div. 315; *Andrews* v. *Brewster,* 124 N. Y. 433.)

A servant who has been wrongfully discharged may choose one of three courses : *First,* he may consider the contract as rescinded and recover on a *quantum meruit* what his services were worth, deducting what he had received for the time during which he had worked. *Second,* he may wait until the end of the term and then sue for the full amount less any sum which the defendant may have a right to recoup. *Third,* he may sue at once for breach of the contract of employment. (Sedg. Dam. [8th ed.] § 665; *Howard* v. *Daly,* 61 N. Y. 362; *Schell* v. *Plumb, supra ; Wakeman* v. *Wheeler & Wilson Mfg. Co.,* 101 N. Y. 205.)

The possible consequences of the breach of the contract should be deemed to have been in the minds of the parties when the contract was made. The fact that the nature of the contract is such that plaintiff's damages are difficult to be determined with accuracy, is not alone sufficient to defeat plaintiff's recovery. (*Wakeman* v. *Wheeler & Wilson Mfg. Co., supra.*) One of the facts to be taken into consideration in determining the damages that the plaintiff has sustained, is the probable duration of the life of the defendant. The Northampton tables, although not conclusive, are competent evidence upon that question. (*Schell* v. *Plumb, supra ; Wakeman* v. *Wheeler & Wilson Mfg. Co., supra ; Empie* v. *Empie,* 35 App. Div. 51.) They were offered in evidence by the plaintiff and excluded by the trial court. This also was error.

The judgment should be reversed and new trial granted, with costs to the appellant to abide the event.

All concurred; PARKER, P. J., and SMITH, J., in result.

Judgment reversed and new trial granted, with costs to appellant to abide event.