EMPIE v. EMPIE et al.

(Supreme Court, Appellate Division, Third Department.   November 16, 1898.)

1. PARENT AND CHILD—BOND FOR SUPPORT—BREACH.
     A grantee of land executed a bond to support his parents during life,
     which was made a lien on the land; and he fulfilled it 15 years, and until
     after the death of his mother.  Becoming insolvent, he conveyed the farm
     to his brother, and refused to longer support his father.  The brother did
     not assume the conditions of the bond, nor offer to support his father, ex-
     cept at his own house.  *Held*, that the father was not bound to live with
     the other son, and hence there was a breach of the bond.

2. SAME—DAMAGES—PROSPECTIVE EXPENSES.
     A contract for life support is a continuing one, and on a breach the ben-
     eficiary, instead of suing for support as it accrues, may recover prospec-
     tive expenses during life.

3. EVIDENCE—OBJECTIONS WAIVED.
     In an action for prospective expenses under a bond for life support,
     plaintiff offered no evidence of prospective medical and funeral expenses,
     but stated that the referee, having been surrogate, "must be familiar
     with the value of such things."  Defendant's attorney made no reply.
     *Held*, that defendant's silence implied consent to that method of proving
     the items.

Appeal from judgment on report of referee.

Bill by Benjamin Empie against George H. Empie and others.
There was a decree for plaintiff, and defendants appeal.   Affirmed.

On the 20th day of February, 1882, the plaintiff and his wife, Mary, con-
veyed to the defendant George H. Empie his farm, in the county of Scho-
harie, N. Y., worth $6,000, and the personal property thereon.  Such convey-
ance was made subject to a certain bond on the same day executed by the
grantee to the grantors for the sum of $2,000, which was the only consid-
eration of said deed, and which, among other things, provided that said
George H. Empie should support and maintain said Benjamin and Mary
Empie, and furnish them medical attendance, during their respective lives;
on their decease, pay all funeral expenses, and erect suitable monuments
over their graves.  Said obligation was made a lien upon the premises so
conveyed by said Benjamin and Mary Empie to said George H. Empie; and,
in case of the failure of the latter to comply with its terms and conditions,
the former were authorized to sell the said premises, or any part thereof,
and out of the proceeds to pay all costs and expenses of such sale, and the
amount that should be due for such support and maintenance, and dispose
of the surplus according to the usual practice in such cases.  Mary Empie
died on the 5th day of March, 1889.  Benjamin Empie lived with his son
George until April 20, 1897.  During this 15 years the latter complied with
the conditions of the covenants contained in said bond.  At that time he
had become insolvent, had executed a mortgage on said farm to the defend-
ant Alfred J. Overpaugh for $4,000, and one to the defendant Reuben L.
Empie for $1,485, and on the 30th day of March, 1897, had conveyed to the
latter said premises by warranty deed, subject to the said two mortgages,
the payment of which the grantee assumed.  Said deed was not made sub-
ject to the lien of the plaintiff under said bond, and the covenants contained
therein were not assumed by the defendant Reuben.  At the time mentioned
(the 20th day of April, 1897), George H. Empie informed the plaintiff that he
could not carry out the obligations of said bond any longer.  He testified on
the trial as follows:  "I cannot tell the day when I told him (my father) I
couldn't perform the obligations of the bond any longer.  I said I would not
support my father, or carry out the obligations of the bond.  I said it in
1897.  I said it about the 1st of April, 1897.  It was after I had given the
deed of the farm to Reuben.  I said it in our kitchen.  It was true when I
said I wouldn't support my father any longer.  I didn't do anything for him."

In consequence of the refusal of his son George to further perform the contract, the plaintiff left the premises about April 30, 1897, and commenced living with one Edmund De Wire. The action was commenced by the service of a summons on Reuben L. Empie on May 3d, George H. Empie on May 4th, after he had left the premises in question, and on the defendant Overpaugh on May 5, 1897, to foreclose plaintiff's lien on said premises under said deed and bond; the plaintiff claiming that, on account of the breach of the covenants contained in the bond by the defendant George, the sum of $2,000 was due to him. The referee before whom the action was tried directed judgment in favor of the plaintiff, determining his damages at the sum of $849.80, made up of the following items:

| | |
|---|---|
| For board, care, washing and mending, and use of horse | $540 80 |
| Medical attendance, prospective | 30 00 |
| Monument for Benjamin and Mary Empie | 100 00 |
| Clothing from the commencement of this action, and prospective | 104 00 |
| Funeral expenses of Benjamin Empie | 75 00 |
| | $849 80 |

The referee directed a sale of said premises, and that the plaintiff be paid out of the proceeds said sum of $849.80 and the costs of the sale. From the judgment entered on the referee's report the defendants Reuben L. Empie and Alfred J. Overpaugh appeal.

Argued before PARKER, P. J., and LANDON, HERRICK, PUTNAM, and MERWIN, JJ.

L. W. Baxter, for appellants.

G. H. Hiller (G. M. Palmer, of counsel), for respondent.

PUTNAM, J. When this action was commenced, in May, 1897, George H. Empie, being insolvent, had given notice to the plaintiff that he could not further carry out the obligations contained in the bond that he executed in 1882, which provided for the support and maintenance of his father. In pursuance of that notice the plaintiff had removed from the farm he had conveyed to his son, to the premises of Edmund De Wire, and made an arrangement with the latter for his support and maintenance. Hence there was a breach of the conditions of the bond by the obligor. The doctrine applicable to such a case is well stated in Frost v. Knight, L. R. 5 Exch. 322, L. R. 7 Exch. 111, as follows:

"The law with reference to a contract to be performed at a future time, where the party bound to the performance announces, prior to the time, his intention not to perform it, as established by the cases [citing them], may be thus stated: The promisee, if he pleases, may treat the notice of intention as inoperative, and await the time when the contract is to be executed, and then hold the other party responsible for all the consequences of nonperformance. * * * On the other hand, the promisee may, if he thinks proper, treat the repudiation of the other party as a wrongful putting an end to the contract, and may at once bring his action as on a breach of it; and in such action he will be entitled to such damages as would have arisen from the nonperformance of the contract at the appointed time, subject, however, to abatement in respect of any circumstances which may have afforded him the means of mitigating his loss."

The principle thus stated was approved in Howard v. Daly, 61 N. Y. 362–375. And see Hochster v. De La Tour, 2 El. & Bl. 678; Windmuller v. Pope, 107 N. Y. 674, 675, 14 N. E. 436; Wills v. Simmonds, 8 Hun, 189–202; Crist v. Armour, 34 Barb. 378; Bernstein v. Meech, 130 N. Y. 354–358, 29 N. E. 255.

When the action was commenced, the plaintiff (over 88 years of age), having conveyed his farm to his son in consideration of the obligation of the latter to support and maintain him during his life, and having been notified by his son that he could not further perform the obligations contained in said bond, had been compelled to make an arrangement for his board and maintenance elsewhere. Having no means, he was necessarily compelled to make an arrangement for his support on credit. He had left the farm and the house of George H. Empie in consequence of the refusal of the latter to perform his contract, and had incurred an obligation for his board and maintenance, which, under the covenants contained in the bond, his son George was obliged to furnish. Clearly there was a breach of the condition of the bond by the obligor which authorized the maintenance of the action. Nor was the plaintiff compelled to wait until some debt had accrued for his maintenance, and commence an action therefor, and afterwards to commence successive actions as claims for his board and maintenance accrued. It has been held that such a contract as that entered into by the defendant George H. Empie with his father is an entire, continuing contract, and upon a breach the obligee may recover, not only the expenses of support to the time of trial, but also prospective expenses during life, and for this purpose the Northampton Tables are competent evidence upon the question as to the duration of life. Schell v. Plumb, 55 N. Y. 592; Wakeman v. Manufacturing Co., 101 N. Y. 205–212, 4 N. E. 264; Shaffer v. Lee, 8 Barb. 412.

The finding of the referee "that the said Reuben L. Empie, ever since he received the deed of said premises as aforesaid, has been ready, able, and willing, and repeatedly offered, to support his father, the said Benjamin Empie, and to fulfill all the conditions of the said bond, and now offers so to do," did not prevent the maintenance of the action. This finding should be read in connection with another, viz. "that plaintiff stayed on the farm till the 30th day of April, 1897, when he was moved to De Wire's, in an adjoining town, and has lived there since, and now lives there,—having been away a few times, at intervals, a short time each; that neither George nor Reuben have contributed or done anything, or promised to pay anything, towards his support or maintenance." The latter finding is based on the evidence, which shows that, when the defendant Reuben offered to support his father, it was in his own family, where the plaintiff evidently did not desire to live. Nor was he compelled to. It is well settled that "under a general obligation to maintain and support another, where no place is specified, the beneficiary may, as a general rule, live wherever he chooses, provided his choice does not involve needless expense." McArthur v. Gordon, 126 N. Y. 597–610, 27 N. E. 1033; Loomis v. Loomis, 35 Barb. 624. Even if it could be held that under the contract the plaintiff was compelled to live with his son George, on the refusal of the latter to carry out the covenants contained in his bond, there was no obligation on the part of the plaintiff to make his home with the defendant Reuben L. Empie. There is no evidence in the case, or claim, that the latter ever offered to pay for the board of the plaintiff at De Wire's, or to fur-

nish any other place in which he might reside. It does not appear that Reuben was under any obligation to support his father. In the deed from his brother he did not assume the obligation of George in that regard. In fact, the deed contains a warranty on the part of George against the plaintiff's claim under the bond. Nor does the evidence disclose the fact that any contract was made between the brothers whereby Reuben became legally bound to carry out the obligations of George contained in the bond. We are not prepared to say, however, that Reuben was not authorized to fulfill those obligations. His position was like that of one owning premises subject to a mortgage, the payment of which he had not assumed, and who, although not personally liable thereunder, might pay the mortgage. So the defendant Reuben, owning the farm in question subject to the lien of the bond given by his grantor for the support and maintenance of the plaintiff,—such bond being an incumbrance on his said farm,—might probably perform the covenants of George in said contract in satisfaction of such lien. But it was for him to show such performance. As we have seen, the plaintiff was not compelled to take up his residence with him. After George had declined to further support his father, if not before, the plaintiff was at liberty to select his own place of residence. The referee finds that since the 30th day of April the defendant Reuben has not contributed or done anything, or promised to pay anything, to support the plaintiff, and the evidence shows that the only offer he made to maintain the plaintiff was to do so at his own residence. Had the defendant Reuben desired to fulfill the obligations of his brother contained in the bond, he could have offered to pay the bill of De Wire for such board and maintenance of the plaintiff, or to have procured for the latter some other suitable place in which to reside. Failing to show any such offer, he has failed to show performance of the covenants in the bond on his part.

We have entertained some doubt as to the propriety of the allowance of the following items: "Medical attendance, prospective, $30; monument for Benjamin and Mary Empie, $100; funeral expenses of Benjamin Empie, $75." No evidence was given in regard to those items, but on the trial, "just before plaintiff rested, counsel for plaintiff stated that unless there was to be a controversy in the testimony over the questions of monument, funeral expenses, and doctor's bill, and board, and as the referee had been surrogate for many years, and must be familiar with the value of such things, he would not introduce further testimony on those subjects. Defendants' attorney made no reply." The plaintiff therefore proposed that the referee, who had formerly held the office of surrogate, and was necessarily familiar with the sums usually and properly allowed for funeral expenses, tombstones, and physicians' bills, should determine the proper amount to be allowed the plaintiff therefor. We are inclined to think that when the proposal was made the defendants were called upon to object to the submission of the matter to the referee in that way, if they desired to do so, that their silence implied consent, and hence that the items in question must be deemed properly allowed.

We are of opinion that the complaint was sufficient to authorize the judgment directed by the referee. It sets up the conveyance by the plaintiff to George H. Empie, the substance of the bond executed by the latter, and the failure of the obligor to comply with its terms and conditions; and although it claims that the damages sustained by the plaintiff in consequence of the breach of the conditions of the bond of the obligor was the sum of $2,000, the allegations in the pleading are sufficient to allow a recovery for such damages as the plaintiff was able on the trial to show he had sustained.

The judgment should be affirmed, with costs. All concur.