## BANTA v. BANTA.

(Supreme Court. Appellate Division, Third Department. May 12, 1903.)

1. MASTER AND SERVANT—CONTRACT OF EMPLOYMENT—STATUTE OF FRAUDS.

Where, in an action for breach of an oral contract of employment, defendant pleaded a general denial only, and did not set up the statute of frauds, either as an affirmative defense, or by objection to the introduction of evidence, or as a ground for the dismissal of the complaint, it was error for the court to grant defendant's motion to dismiss for the reason that the contract was unenforceable by reason of the statute.

2. SAME—DEFINITENESS.

A contract by defendant to give plaintiff and his wife the farm on which defendant then resided, and money enough to buy another farm of equal value, together with their maintenance, and money to buy clothing and other supplies, and a reasonable amount of spending money, in consideration of plaintiff and his wife living with and caring for defendant during the balance of his life, and managing the farm on which he resided, was sufficiently definite and certain in the work to be performed, and in the compensation to be paid therefor, to be enforceable.

3. SAME—DAMAGES—ASCERTAINMENT.

In an action for breach of contract to give plaintiff and his wife a farm, and money enough to buy another of equal value, in consideration of their living with and caring for defendant during the balance of his life, the fact that, from the nature of the contract, plaintiff's damages are difficult of ascertainment with accuracy, is not, alone, sufficient to defeat plaintiff's recovery.

4. SAME—EVIDENCE—DURATION OF LIFE—NORTHAMPTON TABLES.

In an action for breach of a contract to live with and care for defendant during his life in consideration of his giving plaintiff his farm, and

---

¶ 3. See Damages, vol. 15, Cent. Dig. § 5.

sufficient money to buy another of equal value, the Northampton tables of mortality were admissible on the question of the probable duration of defendant's life.

Appeal from Trial Term, Saratoga County.

Action by George C. Banta against Peter N. Banta for breach of a parol contract for services. From a judgment dismissing the complaint, plaintiff appeals. Reversed.

The parties to this action are brothers; the defendant being about 77 years of age, and the plaintiff about 64 years of age. The defendant resides and has resided for many years upon a farm owned by him, and known as the "Banta Homestead," at Clifton Park, in the county of Saratoga. In 1890 the plaintiff lived with his wife in Watervliet, and was employed in the Watervliet arsenal. His wife, Anna M. Banta, was employed at collar stitching. On the 20th day of April, 1900, the defendant's wife died; and he wrote to the plaintiff, requesting him, with his wife, to attend the funeral, at Clifton Park, on April 23, 1900. They did attend the funeral, and, just as they were about to leave for their home, the defendant said to the plaintiff: "How would you and Anna like to come and live with me while I live?" The plaintiff replied: "I don't know. What inducement have you to offer? What proposition have you to make?" And the defendant replied: "I am all broken up, and I don't know what to say or do." The plaintiff suggested to the defendant that he think it over, and further stated that he (the plaintiff), would do the same, and come up and see him (the defendant) again. Plaintiff did go to see the defendant again in about 10 days, and the defendant then said to him that he had about concluded to keep the woman who had been the nurse for his wife as his housekeeper. The plaintiff invited his brother to come and see him, and returned to Watervliet. In the latter part of May the defendant and said nurse came to Watervliet, and remained with the plaintiff from Saturday until Monday; and, when the defendant left, he said to the plaintiff: "George, I wish you would come up shortly. I want to talk that matter over with you again, and thoroughly, and think we can arrange something." Subsequently plaintiff received a letter from the defendant, dated July 28th, in which he says, among other things: "If yourself and wife would like to come up, we will do as well as we can, and all take hold and get along." Plaintiff and his wife each obtained from their employers a vacation of one week, and went to the defendant's August 1st; and the following morning a conversation occurred between the plaintiff and defendant, at which plaintiff's wife was present, the principal part of which, as related by the plaintiff, is as follows: "He said: 'George, how would you and your wife like to come here and stay with me while I live?' I said: 'I don't know, Peter. What kind of a proposition have you got to make?' He says: 'I will give you this farm when I get through with it, and, more than that, I will give you money enough to buy another equally good.' I says: 'Peter, what is the farm worth?' He says: 'It is worth eighteen or twenty thousand dollars of any man's money. * * *' I said: 'We have got to be maintained in some way while this thing is going on, if we accept it.' He says: 'In addition to that, I will give you your board, and money enough to buy your clothing and supplies, and a reasonable amount of spending money.' I says, 'That looks reasonable enough;' and I said to Anna, 'How do you like that?' That was in his presence. She said, 'That looks like a very favorable proposition.' I said then: 'Peter, let us see if we understand each other. You promise me the farm?' He said, 'Yes.' 'And an additional sum to buy another farm equally good?' 'Yes.' 'And in addition to that, our maintenance, in the way of board, and money to buy clothing and other supplies, and a reasonable amount of spending money. I am very much inclined to accept it, and, if Anna is agreed, we will accept your proposition.' My wife said she was agreed to it. I said: 'Peter, we will take your proposition just as you make it.' Peter jumped up from his chair and slapped his hand, and says: 'George, I am glad I am settled, and I hope that some time in the near future you will take the worry of this farm off my hands.' I says, 'Peter, I will

do the best I can to take that worry or any other.' * * * He said my wife was expected to be his housekeeper and take charge of his household—the only woman there." Plaintiff's wife remained at the defendant's house from that day, and the defendant, by agreement, returned to his work in Watervliet, and continued there until November 19th, when the time for which the man then working on the farm had been engaged expired, at which time the plaintiff came permanently to live with the defendant. In the meantime plaintiff and his wife removed their furniture and household effects from Watervliet to the house of the defendant, and each gave up their employment in Watervliet. Plaintiff and his wife continued in the household of the defendant, in the performance of said contract, until June 6, 1902, when the defendant wholly repudiated the contract, and the plaintiff and his wife were required to immediately remove from the premises. The contract was broken by the defendant wholly without fault on the part of the plaintiff. The plaintiff at once brought this action against the defendant, alleging his employment by the defendant and his wrongful discharge, and demanded damages for the breach of the contract. The defendant's answer is substantially a general denial. The statute of frauds is not pleaded. During the time that the plaintiff and his wife were so engaged in the performance of the contract, he repeatedly asked the defendant for money to buy clothing and other supplies, and for spending money, but the total amount received by the plaintiff and his wife during the time of their part performance of the contract was $97.01. On the trial of the action, plaintiff gave testimony as to the contract and his part performance thereof, and of his wrongful discharge on the 6th day of June, 1902, with the circumstances surrounding his employment and discharge, and rested. The defendant moved to dismiss the complaint. The statute of frauds was not suggested as an objection to the introduction of testimony relating to the contract, or as a reason why the complaint should be dismissed. The court, in dismissing the complaint, stated as the reason therefor that the contract was void under the statute of frauds, and that consequently no recovery could be had, except on a quantum meruit, and, as the value of the services had not been shown, the plaintiff could not recover.

Argued before PARKER, P. J., and SMITH, KELLOGG, CHASE, and CHESTER, JJ.

James W. Verbeck, for appellant.
Jacob W. Clute (Edgar T. Brackett, of counsel), for respondent.

CHASE, J. The trial court dismissed the complaint at the close of the plaintiff's evidence without making any findings of fact. As said in Lindenthal v. Germania Life Ins. Co., 174 N. Y. 76, 66 N. E. 629:

"The learned trial judge virtually decided that the plaintiff had not produced any proof at the trial sufficient to call upon the court to consider it, and determine the facts in issue one way or the other."

The evidence is undisputed, and plaintiff is entitled on this appeal to the most favorable consideration that can be given to the facts presented by him.

Where a person performs services under a void contract, or one that cannot for any reason be enforced, his recovery therefor should be measured by the value of the services performed. Sutherland on Damages (2d Ed.) § 684; 20 Am. & Eng. Ency. of Law (2d Ed.) p. 48.

The complaint was dismissed by the trial court upon the assumption that the contract could not be enforced by reason of its being void within the provisions of the statute of frauds. In this assumption the trial court was in error, because the statute of frauds had not

been pleaded by the defendant. The question of the effect of the statute of frauds upon the contract was not before the trial court, and is not before this court. If the defendant had desired to insist that the contract was not enforceable, by reason of the statute of frauds, he should have so stated in his answer; and the objection should have been made by him when the plaintiff's evidence was offered, and also when he asked that the plaintiff's complaint be dismissed.

In Matthews v. Matthews, 154 N. Y. 288, 48 N. E. 531, the defendant had objected to proof of an oral contract on the ground that the same was void by the statute of frauds, which objection had been overruled, and the court said:

"Subsequently to the decision of the former appeal in this case (133 N. Y. 681 [31 N. E. 519]) the case of Crane v. Powell, 139 N. Y. 379 [34 N. E. 911], came before the court, in which the controverted question was whether in an action on an oral contract within the statute of frauds, where the complaint did not disclose the nature of the contract—whether oral or written— it was necessary for the defendant to plead the statute in order to avail himself of the objection. The question was distinctly decided in that case, and it was held that the statute was a defense, and, unless pleaded, was not available to the defendant to defeat the action. The case must be regarded as settling the law of this state, upon which courts of different jurisdictions have differed in opinion. This court regarded the rule adopted in Crane v. Powell as sound in principle, and as supported by the rule applied in analogous cases. It is plain, upon the view that the statute of frauds does not make an oral contract within its terms illegal, but only voidable at the election of the party sought to be charged, that such election must be manifested in some affirmative way. The mere denial in the answer of the contract alleged in the complaint, when the character of the contract is now disclosed, is quite consistent with an intention to put in issue simply the fact whether any agreement was entered into, either oral or written."

The opinion in Matthews v. Matthews has been frequently cited with approval by the Court of Appeals and by the several Appellate Divisions in this state. Sanger v. French, 157 N. Y. 213, 51 N. E. 979; Honsinger v. Mulford, 157 N. Y. 674, 51 N. E. 1091; Hardt v. Recknagel, 62 App. Div. 106, 70 N. Y. Supp. 782; Miller v. Munroe, 59 App. Div. 623, 69 N. Y. Supp. 861; Geneva Mineral Spring Co. v. Coursey, 45 App. Div. 268, 61 N. Y. Supp. 98; Crough v. Nurge, 44 App. Div. 19, 60 N. Y. Supp. 395.

Taking the plaintiff's evidence in its most favorable light, it shows a contract for services as therein stated, for which defendant was to give to the plaintiff his farm when he got through with it, and money enough to buy another farm of equal value. We do not decide whether such contract is void under the statute of frauds. It is otherwise valid, and sufficiently definite and certain in the work to be performed, and in the compensation to be paid therefor, to be enforceable. Matthews v. Matthews, supra; Schell v. Plumb, 55 N. Y. 592; Erwin v. Erwin (Sup.) 17 N. Y. Supp. 442, affirmed in 139 N. Y. 616, 35 N. E. 204; Healy v. Healy, 55 App. Div. 315, 66 N. Y. Supp. 927; Andrews v. Brewster, 124 N. Y. 433, 26 N. E. 1024.

A servant who has been wrongfully discharged may choose one of three courses: First. He may consider the contract as rescinded, and recover on a quantum meruit what his services were worth; deducting what he had received for the time during which he had worked

Second. He may wait until the end of the term, and then sue for the full amount, less any sum which the defendant may have a right to recoup.  Third. He may sue at once for breach of the contract of employment.  Sedgwick on Damages (8th Ed.) § 665; Howard v. Daly, 61 N. Y. 362, 19 Am. Rep. 285; Schell v. Plumb, 55 N. Y. 592; Wakeman v. Wheeler & Wilson Mfg. Co., 101 N. Y. 205, 4 N. E. 264, 54 Am. Rep. 676.

The possible consequences of the breach of the contract should be deemed to have been in the minds of the parties when the contract was made.  The fact that the nature of the contract is such that plaintiff's damages are difficult to be determined with accuracy is not, alone, sufficient to defeat plaintiff's recovery.  Wakeman v. Wheeler & Wilson Mfg. Co., supra.

One of the facts to be taken into consideration in determining the damages that the plaintiff has sustained is the probable duration of the life of the defendant.  The Northampton tables, although not conclusive, are competent evidence upon that question.  Schell v. Plumb, supra; Wakeman v. Wheeler & Wilson Mfg. Co., supra; Empie v. Empie, 35 App. Div. 51, 54 N. Y. Supp. 402.  They were offered in evidence by the plaintiff, and excluded by the trial court. This, also, was error.

The judgment should be reversed, and new trial granted, with costs to the appellant to abide the event.  All concur; PARKER, P. J., and SMITH, J., in result.